**Elbert T. HOVEY, Plaintiff,**

v.

**LUTHERAN MEDICAL CENTER, Defendant.**

No. 80 C 3254.

United States District Court, E. D. New York.

June 10, 1981.

Braunstein, Jacobson, Freeman & Viscomi, New York City (Martin Jacobson, New York City, of counsel), for plaintiff.

Simpson, Thatcher & Bartlett, New York City (John W. Ohlweiler and Terri M. Solomon, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

On July 28, 1978 defendant terminated plaintiff's employment as chief accountant after six and one-half years on the job. Plaintiff was then sixty-two years old. He later filed this action alleging that his termination was in violation of the Age Discrimination in Employment Act of 1967 ("Act"), 29 U.S.C. § 623(a)(1), and a tortious abusive discharge under common law.

Defendant now moves under Rule 12(b) of the Federal Rules of Civil Procedure to dismiss the complaint on the grounds that the claims under the Act are barred by the statute of limitations and that the allegations of an abusive discharge do not state a claim under New York law.

For purposes of the motion the court regards the material allegations of the complaint as admitted and construes the complaint liberally in favor of plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969).

The complaint alleges in substance as follows. Defendant hired plaintiff in December 1971 as chief accountant. During his six and one-half years of employment plaintiff received several salary increases and maintained an unblemished work record. In the first week of June 1978, Chris Aspinall, defendant's director of financial operations, falsely criticized plaintiff's work, and thereafter suggested, under threat of plain-

tiff's dismissal, that he accept a $7,000 reduction in his $22,000 per year salary. When plaintiff refused, Aspinall asked him to submit his resignation by July 1, 1978. The deadline was later extended to July 28 but when plaintiff then refused to resign he was terminated. His termination was willful and based on his age, in part to reduce the cost of funding pension benefits. Plaintiff was replaced by a person less than thirty years old.

About July 31, 1978 plaintiff filed charges with the United States Secretary of Labor alleging age discrimination in violation of the Act. By letter dated August 11, 1978 the Secretary of Labor acknowledged receipt of the charge. On June 19, 1979 the Department of Labor advised plaintiff that its efforts to conciliate his claim were unsuccessful and that he was free to pursue independent legal action. Plaintiff filed this action on November 25, 1980.

On August 9, 1978 plaintiff filed a formal written complaint with the New York State Executive Department, Division of Human Rights, charging that he was discharged from his job because of his age. On October 21, 1980 the Division of Human Rights issued a Determination After Investigation finding probable cause to believe that defendant discriminated against plaintiff on the basis of age.

I. *The Statute of Limitations.*

The general statute of limitations for actions under the Act is two years from the date the action accrues, but claims arising out of willful violations may be brought within three years after the action accrues. 29 U.S.C. § 626(e)(1) incorporating 29 U.S.C. § 255(a). The claim in this case accrued on July 28, 1978, the date of plaintiff's alleged termination. *Jackson v. Alcan Sheet & Plate,* 462 F.Supp. 82, 85 (N.D.N.Y.1978). The complaint was filed on November 25, 1980, two years and four months later.

The allegations that defendant willfully violated the Act are not merely conclusory and are sufficient to bring the action within the three year statute of limitations. Plaintiff alleges that he had an unblemished employment record, that defend-

ant contrived falsely to criticize his work and then fired him after he rejected a $7,000 cut in pay, and that defendant replaced him in the position with a person in his twenties, in part to save pension costs. These allegations sufficiently state a willful violation of the Act.

However, if the action is timely within the three year but not the two year statute, plaintiff may recover only for willful violations. Thus, plaintiff argues that he filed within the two year statute because it was tolled from the date plaintiff's charge was filed with the Secretary of Labor—August 11, 1978—to the date plaintiff was informed that the Secretary's efforts at conciliation were unsuccessful—June 19, 1979.

Section 626(e)(2) of Title 29 of the United States Code provides:

For the period during which the Secretary is attempting to effect voluntary compliance with requirements of this chapter through informal methods of conciliation, conference, and persuasion *pursuant to subsection (b) of this section,* the statute of limitations as provided in section 255 of this title shall be tolled, but in no event for a period in excess of one year. (Emphasis supplied).

The last sentence of section 626(b) recites that "[b]efore instituting any action under this section," the Secretary shall attempt to eliminate the discriminatory practices alleged and seek a settlement through informal negotiation. Section 626(d) provides that no civil action may be commenced by an individual until sixty days after the filing of the charge with the Secretary, who is required in the interim to seek a resolution through informal means of conciliation.

It is plain that the tolling provision of section 626(e)(2) applies only to the conciliatory efforts required by section 626(b) preceding the institution of legal action by the Secretary. The tolling provision does not refer to conciliation before a private civil action. Only the Secretary, not an aggrieved individual, benefits from the tolling provision. *Fulton v. NCR Corp.,* 472 F.Supp. 377, 382 (W.D.Va.1979); House Conference Rep. No. 95–950, 95th Cong., 2nd Sess. *reprinted in* 1978 U.S.Code & Ad.News 528,

534. Plaintiff therefore failed to file within the two year statute.

This construction is confirmed by the different prerequisites to filing suit under sections 626(b) and 626(d). Under Section 626(b) the Secretary must "initially use exhaustive, affirmative action to attempt to achieve conciliation before legal action is begun." *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 374 (8th Cir. 1974). If the statute of limitations were not tolled while conciliation was attempted, an employer might avoid liability by delaying conciliation until the statute of limitations had run out. Under section 626(d) an individual need not exhaust the possibilities of conciliation before commencing action; he merely must give the Secretary sixty days to reach a settlement. If he waits longer before filing suit in the hope that the Secretary's efforts will be successful, he waits at his own risk.

In sum, plaintiff's allegations of willful violations of the Act were timely filed under the statute of limitations. The allegations of non-willful violations were not.

## II. *Abusive Discharge.*

Plaintiff claims that defendant's termination of him constituted a tortious abusive discharge under the common law of New York and asks that this court exercise pendent jurisdiction over this state claim. A federal court is empowered to hear a pendent state claim if it shares with the federal claim "a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The court's discretionary decision as to whether to exercise that power depends on "considerations of judicial economy, convenience and fairness to litigants." *Id.* at 726, 86 S.Ct. at 1139. Here, the federal and state claims present virtually identical issues of fact, the federal claims are unlikely to be dismissed before trial, and the state issues do not predominate. *See id.* If a claim is stated under state law, there is no good reason to decline to exercise pendent jurisdiction.

Defendant contends that allegations of abusive discharge do not state a claim under New York common law. New York, like every other state in the Union, recognizes that an employer generally can discharge an at-will employee for any reason. *See Chin v. American Telephone and Telegraph Co.*, 96 Misc.2d 1070, 1073, 410 N.Y. S.2d 737 (N.Y.Cty.1978), *aff'd*, 70 A.D.2d 791, 416 N.Y.S.2d 160 (1st Dept. 1979); Note, Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith, 93 *Harv.L. Rev.* 1816 (1980). But at least one New York case recognizes that this power is not unlimited. *Chin v. American Telephone and Telegraph Co., supra*, contemplates the possibility that a wronged employee can state a claim for abusive discharge. "At the threshold, the doctrine of abusive discharge places upon the plaintiff the burden of persuading the court that (1) there is a public policy of this State that (2) was violated by the defendant." 96 Misc.2d at 1075, 410 N.Y.S.2d 737.

The principle that the public policy of a state can limit an employer's power to discharge at will employees has been established in other states. The Supreme Court of Illinois held that an at will employee stated a claim when he alleged he was fired in retaliation for filing a workman's compensation claim. *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). The Supreme Court of Oregon, meeting *en banc*, held an employer liable for discharging an employee because she performed her duty by serving as a juror. *Nees v. Hock*, 272 Or. 210, 536 P.2d 512 (1975). Similar decisions have been rendered in California, Indiana, Massachusetts, New Hampshire, and West Virginia. *Petermann v. Intl. Brother-hood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 396*, 174 Cal.App.2d 184, 344 P.2d 25 (1959); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974); *Harless v. First National Bank in Fairmont*, 246 S.E.2d 270 (W.Va. 1978). The principle was set forth by the West Virginia Supreme Court of Appeals in the *Harless* case:

We conceive that the rule giving the employer the absolute right to discharge an at will employee must be tempered by the further principle that where the employer's motivation for the discharge contravenes some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by the discharge. 246 S.E.2d at 275.

In *Savodnik v. Korvettes, Inc.*, 488 F.Supp. 822, 826 (E.D.N.Y.1980), Judge Thomas C. Platt held that New York courts would recognize a tort of abusive discharge when plaintiff was allegedly a model employee who had toiled over thirteen years for defendant and was terminated solely to deprive him of his pension benefits. The court found a "strong public policy in New York favoring the protection of integrity in pension plans." *Id.* at 826–27.

Plaintiff's allegations in this case are similar to those of Savodnik. Plaintiff alleges that he was a model employee for six and one-half years and that defendant discharged him because he was approaching retirement age and it wished to reduce its obligations under the pension plan.

The decision in the *Savodnik* case seems sound to this court. New York has an interest in preserving older employees' interests in pension plans. The policy reflecting that interest is articulated for state government employees in Article 5, Section 7 of the New York State Constitution which provides that "membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired." The state has also manifested its interest in preserving the integrity of pension plans for private employees. New York Executive Law § 540 mandates that the office for the aging shall make an annual report to the governor and legislature and include information as to the coverage of the aged in pension plans and private retirement plans. Exec. Law § 540(3)(e). New York law also provides that all money contributed by an employee from wages or salary to a retirement plan maintained by a corporation or partnership, and all accumulation of inter-

est thereof, shall belong to the employee and shall be deemed to be held in trust for him. If the employer goes bankrupt, the money invested by an employee in a retirement plan must be paid to the employee, not to unsecured creditors. Debtor and Creditor Law § 21–a.

Here plaintiff's allegations of a deliberate discharge, in part to reduce pension costs, are sufficient to withstand a motion to dismiss.

Defendant's motion to dismiss is denied, except that plaintiff will be barred from recovering damages under the Act for any but willful violations. So ordered.