**Perry McCLENDON, Appellant,**

**v.**

**INGERSOLL–RAND CO., Appellee.**

**No. C14–87–768–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 21, 1988.

Rehearing Denied Aug. 18, 1988.

termination. Appellant stated in his petition that retirement benefits would have vested to his benefit if he had continued in appellee's employ for four more months. Furthermore, he alleged that he had laid the ground work for a large transaction with Trinity Equipment, but that the wrongful discharge deprived him of commissions from that sale. In support of his claims that the employment relationship was not terminable at will, he points to a series of writings which govern the calculation of such commissions.

At the time of the termination (Nov. 19, 1982) appellant and his employer determined commissions by reference to a "Compensation Arrangement." Each year the employer promulgated guidelines in such a document which fixed the sales quota, expense budget, and commission schedules for all sales personnel. The parties disagree over whether the compensation arrangement limited their ability to end the relationship at will. Although it does not address the issue directly, the 1982 version of the "arrangement" provides in part:

TERMINATIONS

When the employment by I–R of a commissioned Distributor Representative terminates for any reason before the equipment on which he has been recommended for commission has been invoiced, he is to be paid one-half (½) commission on the sales credit when the equipment is invoiced. In the determination of commission payable under this paragraph, only firm orders on which the commissioned Distributor Representative is recommended for commission and which are received up to the close of the last full working day of the Distributor Representative's actual employment shall be included, provided such orders are accepted by the Company. Any monthly commission on Rental Equipment ceases at the time of termination. Only equipment invoiced within ninety (90) days from termination date will qualify for commission.

From the effective date of termination there will be a thirty (30) day period in which the Distributor Representative will

Michael Y. Saunders, John W. Tavormina, Houston, for appellant.

William T. Little, Mary W. Costley, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

JUNELL, Justice.

This is a wrongful discharge case. Appellant Perry McClendon sued his former employer, Ingersoll–Rand Co., after he was released from his position as a salesman. He alleged that his employment contract was not terminable at will. He also alleged that appellee had breached an implied covenant of good faith and fair dealing, and that appellee intentionally inflicted emotional distress upon him. The trial court rendered summary judgment against appellant. We affirm.

Appellee had employed appellant for nine years and eight months at the time of the

be required to furnish I–R with all commissionable sales due him. No commission request beyond this thirty (30) day period will be honored.

The Special Commission Schedule for attaining quotas does not apply if termination occurs prior to the end of the calendar year.

The document ends by noting that it is subject to change by appellee at any time, and that in any event it expires at the end of 1982. Appellant signed the document, as did a representative of appellee.

The first point of error asserts that the written compensation agreement barred application of the "at will" employment doctrine. The at will rule, as usually formulated, allows either party to an employment relationship to dissolve that relationship at any time and for any reason (or no reason at all). This customary statement of the rule constitutes a serious misrepresentation of the law, however, because employers must abide by a host of restrictions on their discretion.

■ Federal legislation prohibits the firing of an employee for reasons of race, color, religion, sex, or national origin. Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). Federal law likewise bars arbitrary discharge based on age. Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623. The Texas Commission on Human Rights Act echoes these restrictions and additionally outlaws discharge based on handicap. Tex.Rev.Civ.Stat. art. 5221k § 5.01. Retaliatory discharge is illegal in a number of circumstances. *See, e.g.,* Judiciary and Judicial Procedure Act, 28 U.S.C. § 1875 (jury service); National Labor Relations Act, 29 U.S.C. § 158 (union activity); Occupational Safety and Health Act of 1970, 29 U.S.C. § 660 (reporting workplace hazards); Tex.Rev.Civ.Stat. art. 8307c (filing a worker's compensation claim); *see generally* Comment, *The At–Will Doctrine: A Proposal to Modify the Texas Employment Relationship*, 36 Baylor L.Rev. 667, 669–70 (1984) (listing other statutory limits).

■ Texas common law similarly curtails an employer's ability to terminate an employee when the sole reason for termination is the employee's refusal to commit an illegal act. *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985).

■ However, appellant rests his argument not on statutory or common law bases, but on the compensation arrangement. Ingersoll–Rand convinced the trial court that the written document merely stated company policy in the area of sales commissions, and we agree. That the writing calls itself an agreement is in no way a hindrance to dissolution of the employment relation. Indeed, the document's termination paragraphs plainly contemplate that termination may occur at any time. Our conclusion is bolstered by the provision that the "agreement is subject to change, at any time, by the Company without prior written notice."

Appellant relies on *Benoit v. Polysar Gulf Coast, Inc.*, 728 S.W.2d 403 (Tex.App. —Beaumont 1987, writ ref'd, n.r.e.) for the proposition that an employer's right to terminate an employee is limited when a writing so provides *"in a meaningful and special way." Id.* at 406 (emphases in original). Rather than engage in a semantic dispute over what the Beaumont Court meant, we regard the quoted phrase simply as a rhetorical flourish on the more pedestrian expression of the rule in the case it cited, *Webber v. M.W. Kellogg Co.*, 720 S.W.2d 124, 127 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). *Webber* states that employment is at will absent a writing which "specifically" says otherwise. The writing at hand merely regulates sales commissions. Point of error one is overruled.

■ Point of error two claims that the compensation agreement is ambiguous. Although appellant maintains in his reply brief that he raised this argument below, his response to the motion for summary judgment contains no mention of ambiguity. The only conceivable reference to ambiguity appears in the response at paragraph VI, entitled "Burden of Proof." That paragraph reminds the court that Ingersoll–Rand assumes the burden of proof

on all elements of its cause of action, including a showing that the "provision in question is capable of only one meaning or interpretation." The next and final sentence states that "Defendants have not met this burden, and Defendants' Motion for Summary Judgment must be denied."

This passing comment does not meet the requirement that a response *expressly present* the issue to the trial court. TEX.R. CIV.P. 166a(c); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671 (Tex. 1979). On the contrary, this is no more than a challenge to the legal sufficiency of the movant's proof, a challenge which is available on appeal in any event, regardless of whether a response has been filed. Appellant's third point of error raises just such a challenge. We overrule the second point of error.

■ The third point of error asserts that fact issues exist concerning interpretation of the compensation agreement. We glean no such fact issues from either of the depositions on file; neither does the instrument itself admit of any interpretation even remotely supportive of appellant's position. The third point of error is overruled.

■ In his fourth point of error, appellant contends that he substantially performed in regard to the Trinity Equipment deal. This contention does not appear in his response to the motion for summary judgment, although Trinity Equipment is mentioned in paragraph III, entitled "Plaintiff Was Terminated Without Good Cause." (We will address the good cause issue in due course). Appellant's reference to the Trinity Equipment deal can only be read as fortifying his argument that good cause was lacking. Rule 166a(c) does not permit presentation of the substantial performance argument on appeal. We overrule the fourth point of error.

■ Point of error five squarely raises the question whether the parties incorporated a good cause limitation onto Ingersoll–Rand's otherwise unfettered discretion to terminate the relationship. Appellant presented this issue below, despite appellee's claims to the contrary, in paragraph III of his response. Appellant characterizes his employment relationship as containing an "implied in fact" agreement that he not be released except for good cause. This he calls an exception to the at will rule. As evidence of this limitation he points out that he relocated himself and his family to Dallas, implicitly relying on Ingersoll–Rand's willingness to continue his employment.

As to the existence of an implied in fact agreement, both sides' arguments cast more heat than light. The question is not whether such an "exception" in the contract is real or illusory; rather the question is simply, what is the scope of the contract? The contract of employment was never reduced to writing, contained no specification of duration and lacked any limitation on the parties' abilities to go their separate ways. Ingersoll–Rand presented affidavit testimony which corroborates our reading of the compensation agreement. Accordingly, the common law rule applies. *See East Line & R.R. Ry. Co. v. Scott,* 72 Tex. 70, 10 S.W. 99 (1888). The fifth point of error is overruled.

■ In point of error six appellant asks us to create an implied covenant of good faith and fair dealing. The starting point in our analysis is Supreme Court precedent. As recently as five years ago the Supreme Court expressly rejected an invitation to recognize such a rule. *English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983). Appellant regards *English,* however, as incapable of survival without extraordinary means, in view of *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987). In the latter case the Court imposed such a covenant on insurers because of a special relationship between insurers and their insureds. Nevertheless, *Arnold* furnishes us no warrant for renouncing a binding precedent and fashioning a new rule to the contrary.

If we were to recognize the employer-employee relationship as "special," that would be tantamount to putting every commercial contract under the umbrella of *Arnold:* vendor-purchaser, lessor-lessee, lender-borrower. Such an extension would under-

**820**

mine the very foundation of *Arnold* by denying that an insurance relationship is deserving of any special protection: it would in effect repudiate the Court's rationale to confuse the exceptional with the everyday.

 Furthermore, the Supreme Court has gone on record as disapproving encumbrances on free movement in the workplace. *See Bergman v. Norris of Houston,* 734 S.W.2d 673 (Tex.1987); *Hill v. Mobile Auto Trim, Inc.,* 725 S.W.2d 168 (Tex.1987). An employee is as free to leave the relationship as an employer in a competitive environment: "it is but a normal effect of a free market economy." *Hill v. Mobile,* at 172. *See also* Tex.Const. art. I, § 26.

Finally, as discussed earlier, there is no want of legislation which restricts an employer's ability to dissolve an employment contract. It would be impertinent for us to arrogate to ourselves the right to pass additional laws under the guise of deciding cases. TEX. CONST. art. II, § 1. As Chief Justice Guittard said in a wrongful discharge case virtually identical to this one, "In our system of constitutional government, the primary agency to declare the policy of the state is the legislature. Although legislative processes may be imperfect, appeals for judicial legislation based on legislative inaction betray a loss of faith in democratic government." *Watson v. Zep Mfg. Co.,* 582 S.W.2d 178, 180 (Tex.Civ. App.—Dallas 1979, writ ref'd n.r.e.); *accord Molder v. Southwestern Bell Tel. Co.,* 665 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) ("the legislature is the appropriate agency for effecting a change in policy regarding the employer-employee relationship."). To say that the at will doctrine—a misnomer to begin with—was judicially created and can therefore be judicially abolished is to misstate history. The at will doctrine was not generated *ex nihilo* in 1888 against a backdrop of some contrary legal regime. *See* Tex.Civ.Prac. & Rem.Code § 5.001 (adopting the common law of England as the rule of decision when no local source can be found); Comment, *The At-Will Doctrine:*

*A Proposal to Modify the Texas Employment Relationship,* 36 Baylor L.Rev. 667, 667–68 (1984) (tracing the history of the rule back to England). The sixth point of error is overruled.

 The final point of error assigns error to the adverse summary judgment on appellant's claim of intentional infliction of emotional distress. The summary judgment proof establishes beyond dispute that the discharge of appellant was neither extreme nor outrageous. (Indeed, appellant incorrectly concluded that being discharged before ten years of service would prevent him from collecting certain benefits. He was in fact never denied those benefits). Ingersoll–Rand did nothing more than react to an economic downturn by reducing its sales force. Such conduct is in no way actionable. The seventh point of error is overruled.

The judgment is affirmed.