**Perry McCLENDON, Petitioner,**

v.

**INGERSOLL–RAND COMPANY, d/b/a Ingersoll–Rand Company Construction Equipment Group, Respondent.**

No. C–7973.

Supreme Court of Texas.

Oct. 18, 1989.

Rehearing Denied Nov. 15, 1989.

Michael Y. Saunders, John W. Tavormina, Houston, for petitioner.

William T. Little, Houston, for respondent.

SPEARS, Justice.

This is a suit for wrongful discharge. Perry McClendon sued his former employer, Ingersoll–Rand Company. McClendon alleged that he was discharged from his employment so that Ingersoll–Rand could escape its obligation to contribute to his pension fund. The trial court rendered summary judgment in favor of Ingersoll–Rand. The court of appeals affirmed. 757 S.W.2d 816 (1988). We reverse the judgment of the court of appeals and remand the cause to the trial court.

In August 1972, McClendon began employment with Ingersoll–Rand as a salesperson and distributor of construction equipment. He was paid on a commission basis in accordance with the terms of a "Compensation Arrangement" that was to remain in effect through December 1982; however, this "compensation arrangement" did not specifically dictate the term of McClendon's employment.

In late 1979, Ingersoll–Rand transferred McClendon from San Antonio to Dallas so that he could develop a potentially lucrative market there. McClendon secured a substantial amount of business in Dallas, and McClendon's supervisor later testified that he was satisfied with McClendon's job performance. Nevertheless, Ingersoll–Rand fired McClendon on November 19, 1982. Ingersoll–Rand justified McClendon's termination by claiming that external economic factors mandated a work force reduction of *one* salesperson.

McClendon's termination from employment occurred after he had accumulated nine years and eight months of service to Ingersoll–Rand. Further, the termination occurred exactly four months prior to the vesting of McClendon's retirement and pension benefits, at which time Ingersoll–Rand would have been required to contribute to McClendon's pension fund.

In filing suit, McClendon alleged that Ingersoll–Rand breached its employment

contract with him and breached its duty of good faith and fair dealing in connection with the employment relationship.[1] In addition, McClendon asserted a cause of action for wrongful discharge and alleged that Ingersoll–Rand had terminated him to escape its obligation to contribute to his pension fund[2] and to avoid paying him the commission from a particular sale.

At issue is whether McClendon's allegations state a cause of action under Texas law. Texas courts have traditionally followed the employment-at-will doctrine which allows that employment for an indefinite term may be ended at will and without cause. *East Line & R.R.R. Co. v. Scott*, 72 Tex. 70, 10 S.W. 99 (1888); *Molder v. Southwestern Bell Tel. Co.*, 665 S.W.2d 175 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

Although this doctrine has been widely accepted, numerous exceptions and limitations have been placed on its application. For example, federal law prohibits the discharge of an employee because of age, race, religion, sex, color or national origin. Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(d) (1982 & Supp. III 1985); Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a) (1977). Federal law also prohibits a private employer from discharging an employee who exercises his rights under the Fair Labor Standards Act to minimum wage and overtime. 29 U.S.C. § 215(a)(3) (1977 & Supp.1982). Similarly, Texas has enacted various statutes that restrict an employer's discretion to terminate the employment relationship. *See, e.g.*, TEX.REV.CIV.STAT. art. 5207a (discharge based on union membership); TEX. CIV.PRAC. & REM.CODE § 122.001 (discharge because of jury service); TEX.REV. CIV.STAT. art. 8307c (discharge for filing a worker's compensation claim); TEX. GOV'T CODE § 431.006 (discharge because of active duty in the state military

forces); TEX.REV.CIV.STAT. art. 5221k, § 5.01 (discharge based on race, color, handicap, religion, sex, national origin or age).

In addition to state and federal legislation, courts have developed various common-law restraints on the doctrine of employment-at-will. In *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733 (Tex.1985), this court recognized a cause of action for a plaintiff alleging that he was discharged for refusing to perform an illegal act. In creating this exception to the employment-at-will doctrine, we considered the changes in American society and in the employer/employee relationship over the course of the past century, and we held that public policy, as expressed in both state and federal law, required such an exception. *See also Petermann v. International Brotherhood of Teamsters, Local 396*, 174 Cal. App.2d 184, 344 P.2d 25 (1959) (recognizing public policy exception to employment-at-will doctrine in case of employee alleging that he was wrongfully discharged for refusing to perjure himself before a legislative investigative committee).

Numerous other states have accepted the principle that public policy can limit an employer's power to discharge at-will employees. *See Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978); *Frampton v. Central Indiana Gas Co.*, 260 Ind. 249, 297 N.E.2d 425 (1973); *Fortune v. National Cash Register Co.*, 373 Mass. 96, 364 N.E.2d 1251 (1977); *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974); *Nees v. Hocks*, 272 Or. 210, 536 P.2d 512 (1975); *Harless v. First Nat'l Bank*, 162 W.Va. 116, 246 S.E.2d 270 (1978). More specifically, the Eastern District of New York has recognized a cause of action for wrongful discharge when an employee alleges that he was terminated to deprive him of pension benefits. *Hovey v. Lutheran Medical Center*, 516 F.Supp. 554

---

1. Because we have decided this cause on other grounds, we need not reach the issues relating to the tort duty of good faith and fair dealing and we express no view on this matter.

2. Although Ingersoll–Rand ultimately allowed McClendon's pension to vest, McClendon argues that such subsequent vesting does not retroac-

tively reverse any bad faith conduct in which Ingersoll–Rand engaged when it terminated McClendon to avoid pension contributions. McClendon argues that the pension plan issue is relevent in order to explain the motivation behind Ingersoll–Rand's initial termination of McClendon.

(E.D.N.Y.1981). The court expressly recognized the public policy associated with the preservation of pension plans for both governmental and private employees. *Id.* at 558; *see also Savodnik v. Korvettes, Inc.*, 488 F.Supp. 822, 826 (E.D.N.Y.1980) (recognizing strong public policy "favoring the protection of integrity in pension plans" and allowing wrongful discharge cause of action for plaintiff who alleged that employer fired him to avoid paying pension benefits).

In determining whether McClendon has stated a cause of action under Texas law, we recognize that the state has an interest in protecting employees' interests in pension plans. *Cf.* TEX.REV.CIV.STAT., Title 110B (Vernon 1988) (reflecting state's interest in preserving pension plans for public employees). Also, the Employee Retirement Income Security Act (ERISA) makes it unlawful for any person to discharge, fine, suspend or discriminate against any employee for the purpose of interfering with that employee's potential rights under a pension plan. 29 U.S.C. § 1140. The very passage of ERISA demonstrates the great significance attached to income security for retirement purposes.

We hold that public policy favors the protection of integrity in pension plans and requires in this case an exception to the employment-at-will doctrine. This exception allows recovery when the plaintiff proves that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund.[3]

We reverse the judgment of the court of appeals and remand this cause to the trial court for trial.

COOK, J., files a dissenting opinion in which PHILLIPS, C.J., and HECHT, J., join.

GONZALEZ, J., files a dissenting opinion.

COOK, Justice, dissenting.

I dissent. The central issue in this case, as argued and briefed by the parties, concerns whether the duty or implied covenant of good faith and fair dealing exists in the context of an employment-at-will relationship. The majority opinion not only fails to address this issue, but also creates a state cause of action based on conduct already prohibited by federal statute. Given the adverse impact that the majority opinion will have upon our court systems, I would affirm the judgment of the court of appeals.

## I. ERISA

The court reminds us that § 510 of the Employee Retirement Income Security Act (ERISA) makes it unlawful for any person to interfere intentionally with impending pension eligibility. 29 U.S.C. § 1140 (1985). According to the court, ERISA demonstrates the great significance attached to income security for retirement.

I agree. ERISA's § 510 is indeed significant, so significant that it confers upon employees a federal version of the cause of action created by this court, confines litigation of the federal cause of action to the federal courts, and preempts the state cause of action.

Section 510 of ERISA expressly states that it is "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan." *Id.* The case law has interpreted § 510 to delineate a cause of action that applies in precisely the same situations as the one considered today. *See, e.g., Gavalik v. Continental Can Co.*, 812 F.2d 834 (3d Cir.), *cert. denied*, 484

---

**3.** Two federal district court cases have held that a claim for wrongful discharge in order to avoid the payment of pension funds is preempted by ERISA. *Pratt v. Delta Air Lines, Inc.*, 675 F.Supp. 991 (D.Md.1987); *Cahall v. Westinghouse Electric Corp.*, 644 F.Supp. 806 (E.D.Penn. 1986). These cases, however, can be distin-

guished from the present action because here the plaintiff acknowledged in his brief to the court of appeals that he is *not* seeking lost *pension benefits* but is instead seeking lost future wages, mental anguish and punitive damages as a result of the wrongful discharge.

U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987).

Congress provided for the enforcement of § 510 in § 502, which comprises the statute's civil enforcement provisions. 29 U.S.C. at § 1132. Section 502(e)(1) confines litigation of certain claims to federal court. *Id.* at § 1132(a)(3). One of those claims is the § 510 action. *Id.;* 29 U.S.C. at § 1140. Consequently, an ERISA claimant who sues for termination resulting from intent to avoid pension responsibility may sue only in federal court.

The provisions of § 510 do not initially appear to affect the law set out today. It is, after all, possible for state and federal law to address the same problem. Section 514 of ERISA, however, makes it clear that duplication of effort in this area of the law is simply not allowed. 29 U.S.C. at § 1144. Under § 514(a) all provisions of the subchapter in which § 510 is contained preempt state laws that "relate to" employee benefit plans. *Id.* at § 1144(a). In *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 57, 107 S.Ct. 1549, 1558, 95 L.Ed.2d 39 (1987), the United States Supreme Court decided that § 514 superseded a state common law that related to an employee benefit plan. The powerful effect of § 514(a) was repeatedly emphasized by the Court, which expressed its unanimous conviction that Congress intended to establish pension plan regulation as an exclusively federal concern. *Id.* at 45–47, 52–56, 107 S.Ct. at 1551–53, 1555–57.

There can be no doubt that the law created today by this *court* relates to a pension plan and directly conflicts with the specific provisions of § 510 establishing a federal cause of action under ERISA. Consequently, that section preempts our new law through § 514(a). *See Sorosky v. Burroughs Corp.,* 826 F.2d 794 (9th Cir.1987). Furthermore, because preemption of the claim at issue leaves a plaintiff with a cause of action that can be litigated only in federal court, ERISA preempts the forum as well as cause of action. Arguably, this simultaneous affect on forum and claim may deprive the state court of the power to adjudicate. *See International Longshore-*

*men's Ass'n v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986).

Notwithstanding the power of this set of ERISA provisions, a plaintiff might still rely on our decision today to bring our version of the claim for pension-related wrongful discharge in a state court. The plaintiff could purge ERISA from the face of the petition and rely on the well-pleaded complaint rule to deter removal of the case to federal court. *See Louisville & Nashville R.R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Under that rule, which states that a petition that describes only state claims on its face prevents removal by a defendant to federal court, a defendant would be left with nothing better than the dubious opportunity to convince a state court that the pertinent ERISA provisions deprive the state court of subject matter jurisdiction.

This procedural block to removal, however, no longer deters the ERISA § 502(a) defendant. In *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 67, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987), the United States Supreme Court created an exception to the well-pleaded complaint rule in deciding that these defendants may remove. Furthermore, the fact that a state court has no jurisdiction over the claim to begin with, which once prohibited removal, restrains defendants no longer. 28 U.S.C. § 1441(e) (Supp.1989). It is clear, therefore, that defendants faced with a petition that states no more than our new cause of action may remove to federal court, raise the defense of preemption, and replace the common law claim.

By creating today's exception to the employment at will doctrine, the court misleads employees by providing them with an imaginary claim. ERISA, on the other hand, provides them with a real and enforceable claim that they may bring in federal court and at the same time supersedes the claim manufactured today. I believe that ERISA's provisions make it doubtful that a state court even has power to adjudicate the new cause of action. In any case, astute defendants need not wait to find out. They need only remove to federal

court and raise a defense of preemption. I sincerely regret the confusion and prolonged litigation we have thrust upon employers and employees in their efforts to resolve disputes concerning their pension plans.

## II. SUMMARY JUDGMENT

An equally profound implication of the majority opinion concerns the availability of summary judgment proceedings in wrongful discharge cases. In its motion for summary judgment, the general supervisor for Ingersoll–Rand submitted a sworn affidavit stating that McClendon's termination arose as part of a company-wide reduction of the workforce in response to adverse economic conditions. The response by McClendon noted that his termination occurred four months prior to the vesting of his pension, at which time the company would have been required to contribute $3000 to his employee pension fund. McClendon also relied on comments made by his supervisor, who stated his general satisfaction with McClendon's job performance. This evidence, according to the holding of the majority, is sufficient to raise a fact issue on whether the employer terminated the employee in part to escape contributions to the employee pension fund.

This holding, however, raises a question that remains unanswered: when will the evidence presented on motion for summary judgment be insufficient to raise an issue of fact on the employer's intent? The court today finds a fact question under the evidence presented in this case, a case in which the termination preceded the vesting of the benefits by four months; would a fact question also be raised when the termination preceded the vesting by five months or nine years and eleven months? The majority opinion unfortunately fails to provide trial courts and litigants with the answer to this crucial question. In the absence of an answer, an employee is presumably guaranteed a jury trial by merely alleging that the principal reason for his termination was the employer's desire to avoid contributing to or paying benefits under the employee's pension fund.

This approach undercuts the very purpose of summary judgment proceedings, which are designed to eliminate patently unmeritorious claims and untenable defenses. *See In re Estate of Price,* 375 S.W.2d 900, 904 (Tex.1964). The provision for summary judgment proceedings serves the critical functions of eliminating baseless claims from congested trial dockets and saving the unwarranted expenses involved in trying such actions. This concern has likewise been recognized in the context of wrongful discharge actions brought pursuant to ERISA. For example, an employee must establish more than the mere fact that the termination of his employment resulted in a monetary savings to his employer; otherwise, an ERISA violation would occur every time an employer terminated a vested employee. *See Nixon v. Celotex Corp.,* 693 F.Supp. 547, 555 (W.D.Mich. 1988); *Donohue v. Custom Management Corp.,* 634 F.Supp. 1190, 1197 (W.D.Pa. 1986).

Herein lies the crux of my concern with the majority opinion. By permitting tort damages in actions based on the employer's desire to escape an obligation to contribute to pension funds and yet failing to deliniate those circumstances under which a summary judgment would be appropriate, the court has unduly chilled an employer's right to terminate an at-will employee with or without cause. No longer can the vast number of employers rely on a valid reason in terminating employees without a jury's scrutinization of their decisions and the possible imposition of tort damages. By terminating employees at any point prior to their retirement, employers need only wait for the court summons to explain and justify their decisions to a jury. The proverbial "floodgates of litigation" have never been a more appropriate concern than in the decision reached by this court today. For this reason, I strongly oppose the majority's decision to place unwarranted limitations on the employment-at-will doctrine.

## III. BREACH OF GOOD FAITH AND FAIR DEALING

In his arguments presented to this court, McClendon seeks to hold Ingersoll–Rand to

the duty of good faith and fair dealing in the context of their former employment relationship. Despite his characterization of this duty as an "implied covenant," which suggests an action sounding in contract, McClendon also seeks the recovery of tort damages such as mental anguish, emotional distress, and punitive damages. McClendon based his claim for tort damages on *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165 (Tex.1987), a case in which this court recognized a duty on the part of insurers to deal fairly and in good faith with their insureds. This duty arises from the special relationship that exists in the insurance context due to an unequal bargaining power between the parties and the special nature of such contracts. *Arnold*, 725 S.W.2d at 167. While implied covenants are contractual in nature, the duty of good faith and fair dealing is imposed by law in insurance relationships. *Chitsey v. National Lloyds Ins. Co.*, 738 S.W.2d 641, 643 n. 1 (Tex.1987).

Employers, however, do not generally receive economic benefits by terminating productive employees and thus do not require disincentives to terminate employees in addition to those already imposed by law. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 765 P.2d 373, 396, 254 Cal.Rptr. 211, 234 (1988); Epstein, *In Defense of the Contract at Will*, 51 U.CHI.L.REV. 947, 973–74 (1984) (hereinafter Epstein, *Contract at Will*). Further, employment relationships do not possess an inequality in bargaining power as a universal characteristic and thus cannot be analogized to insurance relationships on this basis. *See* Epstein, *Contract at Will*, 51 U.CHI.L.REV. at 973–74; *see also* Note, *Defining Public Policy Torts in At–Will Dismissals*, 34 STAN.L.REV. 153, 165–67 (1981) (hereinafter Note, *Defining Torts*).

The employment relationship is also distinguishable on the basis of the duties owed by the respective parties under the contract. Employers, unlike insurers, do not owe similar fiduciary duties to their employees, who are themselves agents of the employers and are obligated to act in their employers' interests. *Foley*, 765 P.2d at 395, 254 Cal.Rptr. at 233, (citing Note,

*Defining Torts*, 34 STAN.L.REV. at 165–67). The duties owed in an employment-at-will relationship are instead premised on the mutuality of obligations existing between the employee and employer, both of whom are able to terminate the relationship with or without cause. I would therefore decline to extend the duty articulated in *Arnold* and its imposition of tort damages to employment-at-will relationships. There should not be a tort cause of action for a breach of good faith and fair dealing in an employment-at-will relationship. I would thus follow the majority of jurisdictions that have not allowed the recovery of tort damages for a breach of the duty or implied covenant of good faith and fair dealing in at-will employment relationships.

Additionally, McClendon is not entitled to recover contract damages under an implied covenant of good faith and fair dealing in this case. According to McClendon, the company terminated his employment to avoid paying any commissions that he would have earned from future sales. The contractual right to these commissions was set forth in a written compensation agreement, which expressly addressed the commissions to be earned by McClendon in the event that Ingersoll–Rand terminated his employment for any reason. McClendon has not alleged that the company owed any commissions that had already been earned under the terms of this agreement at the time of his termination. Instead, McClendon apparently seeks the recovery of commissions that would have eventually been earned from future sales.

McClendon and Ingersoll–Rand contemplated and expressly set forth the manner by which the commissions would have been earned in the event of a termination. Under the express terms of this agreement, the parties did not create a right on behalf of McClendon to earn potential commissions. Thus, the covenant of good faith and fair dealing cannot be implied in this instance to set aside the express terms of their agreement and permit McClendon's recovery of potential commissions. *See Willis v. Champlain Cable Corp.*, 109 Wash.2d 747, 759, 748 P.2d 621, 627 (1988).

McClendon further alleges that Ingersoll–Rand terminated his employment in order to prevent the vesting of his retirement and pension benefits, thereby relieving the company of its required contribution to his pension fund. On motion for summary judgment, however, Ingersoll–Rand presented an uncontroverted affidavit stating that McClendon's benefits have in fact vested. Because McClendon has received his retirement and pension benefits, the trial court properly rendered summary judgment with respect to the recovery of these contractual benefits.

I would accordingly affirm the judgment of the court of appeals.

PHILLIPS, C.J., and HECHT, J., join in this dissent.

GONZALEZ, Justice, dissenting.

I join with Justice Cook's conclusions that this cause of action is preempted by ERISA, and that it will be very difficult, if not impossible, to filter out meritless cases by summary judgment as a result of today's opinion. I write, however, to emphasize what the court's decision does not do. It does not extend the duty of good faith and fair dealing to the employment-at-will doctrine; and it does not decide what damages are available for this new cause of action. I further note that the federal authority that the court finds persuasive is questionable.

By point of error, McClendon invited us to engraft the duty of good faith and fair dealing as enunciated in *Arnold v. National County Mutual Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987) on to the employment-at-will doctrine.[1] We refused.

In responding to this point of error, the court instead created a narrow "exception to the employment-at-will doctrine." In creating this exception, the court fails to give the bench and bar clear guidance as to whether this "exception" creates a new cause of action sounding in tort or whether it merely eliminates the doctrine as a contractual defense. *See Brockmeyer v. Dun & Bradstreet,* 113 Wis.2d 561, 335 N.W.2d 834 (1983); *see generally,* Annotation, *Dis-*

*charge of At–Will Employee,* 12 A.L.R. 4th 544 (1982).

In an attempt to avoid the preemptive effect of ERISA, the court observes that the plaintiff here is "seeking lost future wages, mental anguish and punitive damages" as a result of the alleged wrongful discharge. P. 71 at n. 3. The court, however, does not resolve whether the plaintiff is entitled to all damages pleaded. This is essentially an open question. In *Azar Nut Co. v. Caille,* 734 S.W.2d 667 (Tex.1987), we allowed punitive damages, but this was in a statutorily-created cause of action for which the right to exemplary damages could reasonably be inferred from the language of the statute. In *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985), we recognized a common law exception but did not decide the question of available damages. *Id.* at 736 (Kilgarlin, J., concurring). As a general rule, the damages available for common law wrongful termination are contractual in nature. *Greater Fort Worth and Tarrant County Community Action Agency v. Mims,* 627 S.W.2d 149 (Tex.1982).

Furthermore, the court's reliance upon two federal district court cases, *Hovey v. Lutheran Medical Center,* 516 F.Supp. 554 (E.D.N.Y.1981) and *Savodnik v. Korvettes, Inc.,* 488 F.Supp. 822 (E.D.N.Y.1980) is misplaced. Those two courts created a public policy exception to the employment-at-will doctrine that another New York federal district court refused to follow, stating:

> [A] change in New York's law such as the recognition of a tort which for the past 90 years has not been recognized by the New York Court of Appeals, should not be brought about by a federal district court deciding issues of state law solely by virtue of the diversity of citizenship of the parties before it (citations omitted). [H]irings for an unspecified or indefinite period are freely terminable at the will of either party.

*Salanger v. U.S. Air,* 560 F.Supp. 202, 205 (N.D.N.Y.1983). Additionally, one New York intermediate court of appeals con-

---

**1.** We granted McClendon's application for writ of error on points two and four. Point four contended: "The Court of Appeals erred when it failed to recognize that a covenant of good faith and fair dealing should be applied to Respondent's employment relationship with Petitioner."

sidered and refused to follow the same cases the court now finds persuasive:

> We find no case in this state wherein a cause of action for abusive discharge based on a violation of public policy has been sustained and we are unable to subscribe to such a cause of action in light of the well-established principle that an at-will employee may be discharged at any time without cause.

*Pavolini v. Bard Air Corp.*, 88 A.D.2d 714, 715, 451 N.Y.S.2d 288, 289 (1982). The highest court of the State of New York has declined opportunities to carve out exceptions to the employment-at-will doctrine. *See Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 443 N.E.2d 441, 457 N.Y.S.2d 193 (1982); *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983); *see also Salanger*, 560 F.Supp. at 205; *Patrowich v. Chemical Bank*, 98 A.D.2d 318, 470 N.Y. S.2d 599 (1984).

For the above reasons, I dissent.