Dilip K. PAUL, Appellant,

v.

**P.B.–K.B.B., INC., Appellee.**

No. B14–90–107–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 6, 1990.

Rehearing Denied Jan. 10, 1991.

Lydia Clay–Jackson, Conroe, Robert M. Wood, Woodville, for appellant.

Anson D. Phipps, Houston, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

OPINION

ROBERTSON, Justice.

This suit was for wrongful discharge. Judgment on the jury's response to the question on "cause" was for the employer. The sole issue on appeal concerns the causal test employed by the trial court in submitting the case to the jury. We affirm.

While the exact sequence of events is not totally clear from the record, it appears that the appellant, an engineer, was first employed by appellee, an engineering firm, in June, 1981. Appellee, through a general contractor, was employed to design an exploratory shaft for a nuclear waste storage project for the United States Department of Energy. The exploratory shaft was "to provide access for the scientists to go underground and do the testing, and to determine whether that particular type of geology, that particular type of rock is suitable for a location of a depository of what you call a 'dump'." In June, 1982, appellant was selected by the chief mining engineer to serve as a mining engineer on the project. His function was to "identify the trade-off ventilation study"[1] for which there was some urgency, "because it impacted more than one discipline." When appellant had not turned in his trade-off study to the mining engineer on time and had done nothing by mid-July, he was transferred by the mining engineer to the "interstructure" division of the company, and during the first part of August, 1982, he was discharged.

Appellant filed suit alleging that he was discharged because he refused to commit an illegal act. His allegations were that the preliminary study called for one shaft rather than two and that this design "could've killed people." He testified that, as an engineer, he would have been required to certify the plans and specifications and that had he done so he would have violated Section 22.05 of the Texas Penal Code proscribing "reckless conduct."[2] He explained that "if there was

---

1. Dr. Mirza, the mining engineer for appellee, described "trade-off studies" as the "design among ourselves ... what are the things given to us, how can we do it, can we do it or can't we do it and what is the best way of doing it."

2. Tex.Penal Code Ann. § 22.05 provides:

(a) A person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury.
(b) Recklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded.

an explosion there, everybody there would be killed" and that it would "possibly" be his fault. He asserted that he was discharged because of his objections to the project. He identified a written memorandum of objections he leveled at the safety of the project, and an exhibit which he stated was his trade-off study that was turned into the company on July 28, 1982. The chief mining engineer denied that appellant ever did any work on the trade-off study, and stated that because appellant failed to work for him, he transferred him to another division of the firm where he had previously worked because maybe that supervisor "could get more work out of him."

The first question submitted to the jury inquired: "Was the sole reason for the termination of Dilip K. Paul by P.B.–K.B.B., Inc. refusal by him to commit an illegal act, if any?" The jury answered "No." All other questions were predicated upon an affirmative answer to the first question and therefore were not answered. Appellant objected to the question on the basis that it required the refusal to commit an illegal act to be the *sole reason* for termination. He requested, instead, that the question be framed whether the failure to perform an illegal act was a *producing cause* of his termination. Appellant further requested that a question be submitted on whether the defendant would have fired the plaintiff for other reasons, even if he had not refused to perform an illegal act.

The supreme court carved the first exception to the employment at will doctrine in *Sabine Pilot Service v. Hauck*, 687 S.W.2d 733 (Tex.1985). The court there held that an employer may not discharge an employee for the sole reason that the employee refused to perform an illegal act. However, the court said, "in the trial of such a case it is the plaintiff's burden to prove by a preponderance of the evidence that his discharge was for *no reason other* than his refusal to perform an illegal act." (emphasis supplied). *Id.* at 733. Appellant argues that the language of the supreme

court is overly broad and that it represents a "radical and unexplained departure from centuries of decisional law on tort causation," citing *Law of Torts*, Wm. Prosser, 4th Ed., § 41, Causation in Fact, pp. 236–239. Appellant also asserts his argument is supported by *McClendon v. Ingersoll–Rand Co.*, 779 S.W.2d 69 (Tex.1989) *cert. granted* — U.S. ——, 110 S.Ct. 1804, 108 L.Ed.2d 935 (1990), where, in creating another exception to the employment at will doctrine, the supreme court held that if "*the principal reason* for his termination was the employer's desire to avoid contributing to or paying benefits under the employer's pension fund," such termination is illegal. (emphasis supplied).

While there is a variance in the tests applied by the court under the two different circumstances, we cannot say that the court did not have compelling reasons for imposing them. Both *Sabine Pilot* and *McClendon* were cited with approval in *Winters v. Houston Chronicle Publishing Co.*, 795 S.W.2d 723 (Tex.1990). If the two tests are to be harmonized, that is the prerogative of the supreme court. Appellant's point of error is overruled.

The judgment of the trial court is affirmed.

(c) An offense under this section is a Class B     misdemeanor.