**N.J. OLIVER, R.B. Parker, and Texas State Optical of Meyerland, Appellants,**

v.

**S.J. ROGERS and N. Jay Rogers, Individually and d/b/a Texas State Optical; Pearle, Inc.; and Pearle Vision, Inc., Appellees.**

No. 01–90–01124–CV.

Court of Appeals of Texas, Houston (1st Dist.).

May 28, 1998.

Rehearing Overruled July 9, 1998.

Ernest R. Higginbotham, Dallas, Jay N. Gross, Louis Paine, Houston, for appellants.

Dennis Herlong, Houston, for appellees.

Before SCHNEIDER, C.J., and MIRABAL and PRICE,* JJ.

## OPINION

SCHNEIDER, Chief Justice.

Appellees, S.J. Rogers and N. Jay Rogers, individually and doing business as Texas State Optical have requested the Court to rehear this appeal. We overrule their motion for rehearing, but withdraw our former opinion and substitute this one in its place. Appellants, N.J. Oliver, R.B. Parker, and Texas State Optical of Meyerland (collectively "Oliver and Parker") were plaintiffs below. In three points of error, they appeal the trial court's take-nothing summary judgment on their claims of breach of contract, breach of implied contract, fraud, and breach of a duty of good faith and fair dealing, arising from their purchase of a Texas State Optical (TSO) office and the subsequent opening of another TSO office in a location they contend was contractually prohibited. Appellees are the defendants below: S.J. Rogers and N. Jay Rogers, individually and doing business as Texas State Optical (collectively "Rogers") and Pearle, Inc. and Pearle Vision, Inc. (collectively "Pearle").

## I. Factual and Procedural Background

### A. The Meyerland Contract

On May 28, 1968, the Rogers, themselves optometrists and founders of TSO, agreed to sell the TSO Meyerland office to Oliver and Parker. A provision of the contract[1] called for them to pay the Rogers 10 percent of the

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. Sometimes referred to in this opinion as the "Meyerland contract."

monthly net cash of the office [2] during a "payment period" from January 1, 1978 [3] to December 31, 1985, which was later amended to run from February 1, 1973 to December 31, 1985. The following two provisions were contained in the contract:

9. First Parties [Rogers] agree that for so long as Second Parties [Oliver and Parker] are not in default as to the covenants and conditions of this contract, First Parties will not open a like or similar optometric business or optical dispensary for the practice of optometry nor grant any Third Party the right to open a like or similar optometric business or optical dispensary under the name T.S.O. (as defined) for the practice of optometry within that certain area described in Exhibit A attached hereto and hereinafter described as the "excluded area". . . .

10. First Parties agree that for so long as Second Parties are not in default . . . their Ownership of the office shall include the right to use the tradename Texas State Optical (as defined) within and only within the excluded area. It is acknowledged, however, that there may exist from time to time, sales contracts for other offices within close proximity to the boundaries of the "excluded area" and that the protected area of such offices may coincide with part of the protected area of the Meyerland office. . . .

Exhibit A defined the "excluded area" as being within a three-mile radius of the TSO Meyerland office at its location on the date of the contract execution. It excepted from that area any TSO office in operation at the date of the signing of the contract. On the contract execution date, there were no other TSO offices within a three-mile radius.

The contract contained other provisions extending beyond the payment period into the future. For example, it included a provision in paragraph six that Oliver and Parker would operate the office in accordance with the Rogers' general policies and business practices, "as long as the name T.S.O. is used. . . ." Similarly, paragraph 15 provided that during the payment period, "and thereafter, for so long as the trade name T.S.O . . . is used in [Oliver's and Parker's'] operation," the TSO Meyerland office would pay a pro rata share of the costs of TSO advertising in the Houston market.

The contract also contained clauses providing that if a third party offered to buy Oliver and/or Parker's interest in the office, they would first give the Rogers the right to buy the interest on the same terms.

## B. The Village Office

A month before the execution of the Meyerland contract, the Rogers had entered into a similar arrangement, the Village agreement, with another optometrist, Aron Seibel, for an office with a 2 1/2–mile excluded area that overlapped a portion of the excluded area of the TSO Meyerland office.

## C. Modification of Meyerland Contract

In 1974, a TSO associate office owner in Dallas sued the Rogers, alleging their contract with him violated the State's antitrust statutes. N. Jay Rogers, by letter dated August 23, 1976, informed Oliver and Parker of potential antitrust violations in the Meyerland contract and tendered a new one eliminating several alleged anti-competitive provisions, including the portion of paragraph nine providing for the "excluded area." The Rogers assert this effort to reform the contract arose from the Dallas lawsuit and was an attempt to delete illegal provisions.

As of the date of N. Jay Rogers's letter, Oliver and Parker had made 42 payments, totaling approximately $230,000, for the purchase of the TSO Meyerland office. Oliver and Parker agreed to most of the modifications proposed by the Rogers, including deletion of the portion of paragraph 10 relative to the possible overlapping of the Meyerland excluded area by protected areas of neighboring offices. However, regarding the "ex-

---

2. The payments were to be increased to 12 percent in the third and fourth years of the purchase period.

3. The sale phase, under the agreement, was preceded by two earlier phases, an employer/employee phase and a partnership phase, which, combined, were scheduled to run from 1968 to 1978.

cluded area" portion of paragraph nine, Parker wrote N. Jay Rogers on August 24, 1977, that he and Oliver needed it in the modified version of the contract. In accordance with the contract, Oliver and Parker continued to make the monthly payments.

In a second letter, in 1978, the Rogers unilaterally deleted from the Meyerland contract several provisions, including paragraph nine. By letter dated March 20, 1978, Oliver and Parker advised the Rogers that they did not agree to deleting paragraph nine from the contract. Oliver and Parker continued to make the payments. In all, they paid the Rogers over one million dollars for the purchase of the TSO Meyerland office.

### D.  Rogers's Sale of Business

On October 22, 1979, the Rogers, by an asset acquisition agreement, sold to Pearle the TSO trade names and trademarks, except for the Rogers's use of them for advertising purposes for those offices for which they would have a continuing advertising responsibility, such as the TSO Meyerland office. Language in the agreement provided that the TSO Meyerland office was not one acquired under the agreement and that Pearle would not assume or in any way become liable for liabilities or obligations of the Rogers. Later, TSO, Inc. acquired all the assets, rights, and obligations acquired by Pearle under the asset acquisition agreement.[4]

### E.  Relocation of the Village Office

In July 1986, Dr. Burt Denton, who had bought the Village office from Seibel, moved it from its former location to Stella Link and Holcombe, less than three miles from the TSO Meyerland office.

At a deposition of N. Jay Rogers on September 9, 1986, Rogers produced a May 28, 1976 contract conveying to Seibel the Rogers's remaining ownership interest in the TSO Village office. The 1976 contract gave Seibel the right to use the trade name TSO in one office within a given license area. That license area included part of the TSO Meyerland area. Neither of the Rogers ever

told Oliver or Parker about the 1976 agreement with Seibel.

When Oliver and Parker learned TSO Village office was planning to open an office within their excluded area, they phoned a representative of TSO, Inc. and informed him it would be a violation of the Meyerland contract. Counsel for Oliver and Parker subsequently sent a written request to TSO, Inc., as successors to the Rogers under the contract, to take the necessary action to honor the contract and prevent TSO Village office from relocating. Pearle responded with a statement of its position for denying Oliver's and Parker's request.

Even after the TSO Meyerland office had been paid for in full, Oliver and Parker continued and continue to be assessed various advertising charges, according to the provisions of the contract, and for the years 1986 to 1989, alone, they paid in excess of $200,000 in such assessments.

### F.  Oliver's and Parker's Suit

Oliver and Parker filed their original petition against the Rogers and Pearle on August 5, 1986. In 1990, they filed their fifth amended original petition. Against the Rogers, Oliver and Parker pled causes of action for breach of contract, fraud or material misrepresentation, and breach of a duty of good faith and fair dealing. They pled they did not discover the Rogers's wrongdoing until the September 9, 1986 N. Jay Rogers deposition. They pled a cause of action against Pearle for breach of the Meyerland contract on the theory that Pearle succeeded to the Rogers's rights and obligations under that contract by virtue of (1) the language in the asset acquisition agreement whereby it obtained ownership of the names "Texas State Optical" and "T.S.O.," or, alternatively, (2) by an implied contract between TSO, Inc. and Pearle on the one hand and the Rogers on the other hand. Oliver and Parker pled the implied contract was based on Pearle's assumption of the right to conduct on-site audits of the associate offices as part of their quality review program and its attorney's statement setting forth Pearle's position for denying Oliver's and Parker's request for

---

4.  TSO, Inc. was an appellee in this appeal, but has been dismissed because of settlement.

action to be taken to stop the relocation of the TSO Village office into their excluded area.

### G. Defendants' Answer and Motion for Summary Judgment

The Rogers answered with a general denial and a counterclaim for a declaratory judgment that Oliver and Parker had no cause of action against them. Pearle generally denied Oliver's and Parker's petition and counterclaimed for a declaratory judgment that it was not a party to the agreement between the Rogers and Oliver and Parker.

### H. Motions for Summary Judgment

#### 1. Rogers's Motion for Summary Judgment

The Rogers moved for summary judgment on the matters pled in Oliver's and Parker's fifth amended original petition.

##### a. The Contract Claim

The Rogers asserted the court should award them summary judgment on Oliver's and Parker's contract claim because: (1) the restrictive covenant in paragraph nine, with an unlimited duration, is unreasonable as a matter of law under common law and former section 15.50(2) of the Business and Commerce Code;[5] (2) at the time the contract was signed, the territorial restriction violated the 1968 Texas antitrust statute;[6] (3) the alleged 1976 breach is time barred by the four-year statute of limitations; and (4) the Rogers could not have breached the contract because Oliver's and Parker's contract never gave them any right to any portion of the Village territory.

##### b. The Fraud Claim

The Rogers argued that Oliver's and Parker's fraud claim was based on the alteration of Seibel's Village contract in 1976. They asserted they were entitled to summary judgment on this claim for the following reasons: (1) the reformation of the Village contract was undertaken solely to avoid potential

antitrust suits against them and to protect the various associate office owners from similar suits; (2) Oliver and Parker could not establish the intent element of fraud; (3) the Rogers's lack of fraudulent intent is demonstrated as a matter of law by the fact that they actually performed the contract from 1968 until at least 1976; (4) the alleged 1976 fraudulent act is time-barred because Oliver and Parker testified in their depositions that they failed to exercise any diligence to discover the Rogers had reformed the Village contract and "didn't care"; and (5) since Oliver's and Parker's action is one for economic damage, based on a breach of contract, the action, if any, is one for contract and not tort.

##### c. Implied Duty of Good Faith Claim

The Rogers asserted they were entitled to summary judgment on Oliver's and Parker's bad faith claim because Texas courts have never extended this duty to a situation involving the sale of a business.

##### d. The Summary Judgment Evidence

In support of their motion for summary judgment, the Rogers attached the following: (1) the April 20, 1968 contract between the Rogers and Aron Seibel; (2) the May 27, 1968 contracts between the Rogers and Oliver and Parker; (3) correspondence between the Rogers and Oliver and Parker from 1976 to 1978 regarding the modification of the contract to remove the purported anticompetitive provisions; (4) excerpts from Oliver's and Parker's depositions; (5) affidavit of N. Jay Rogers authenticating documents and stating facts regarding the Rogers's reformation of the contracts to avoid antitrust violations; and (6) the Pearle motion for summary judgment addressing the enforceability of the covenant not to compete.

#### 2. Pearle's Motion for Summary Judgment

Pearle asserted Oliver's and Parker's breach of express contract claim was not viable because under the asset acquisition agreement, it assumed only those liabilities

---

5. Act of May 23, 1989, 71st Leg., R.S., ch.1193, § 1, 1989 Tex. Gen. Laws 4852 (amended 1993) (current version at Tex. Bus. & Com.Code Ann. § 15.50 (Vernon Supp.1998)).

6. Act of May 24, 1967, 60th Leg., R.S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2554–56, (amended 1983) (current version at Tex. Bus. & Com.Code Ann. § 15.05 (Vernon 1987)).

and obligations specifically set forth in the agreement, none of which included obligations under the covenant not to compete in the Meyerland contract. Pearle further contended Oliver's and Parker's breach of implied contract claim was barred as a matter of law because: (1) there can be no implied contract when the subject matter of the alleged implied contract is already covered by an express contract between the same parties; (2) it would violate the statute of frauds by not being in writing and not being performable within one year; and (3) if it existed, it would be unenforceable for the reasons discussed under "1.a." above.

## I. Oliver's and Parker's Response to Summary Judgment Motions

### 1. Enforceability of the Restrictive Covenant

To the Rogers's and Pearle's assertions that the covenant not to compete was void or legally unenforceable, Oliver and Parker responded that, as a matter of law, under case law it was a valid covenant not to compete ancillary to a permissible transaction.[7]

### a. Former Sections 15.50–15.51 of the Texas Business and Commerce Code

Oliver and Parker disagreed with the Rogers's, and Pearle's argument that the covenant not to compete violated former sections 15.50–15.51 of the Business and Commerce Code. They urged instead that the statute simply (1) reversed the holding of *Hill v. Mobile Auto Trim*, 725 S.W.2d 168, 172 (Tex. 1987) that all covenants involving common callings are void as a matter of law, and (2) otherwise codified the common law. Oliver and Parker also stated that in one respect, former section 15.51[8] changed the common law it otherwise codified by placing the burden of proof, except in personal service contracts, on the promisor to show that the covenant imposes a greater restraint than is necessary to protect the goodwill or other

business interest of the promisee. Oliver and Parker contended that Rogers and Pearle failed to discharge this burden because they introduced no summary judgment evidence on this point. Further, Oliver and Parker argued that the cases cited in the motions for summary judgment did not establish that the covenant not to compete violated the 1968 antitrust laws.

### b. Timeliness of Oliver's and Parker's Filing of Breach of Contract and Fraud Claims

Oliver and Parker asserted that they timely filed their breach of contract and fraud claims, pointing to their affidavits as summary judgment evidence that until the deposition of N. Jay Rogers on September 9, 1986, they neither knew, nor had reason to know, of the Rogers's May 28, 1976 agreement with Seibel permitting him to open a TSO office in TSO Meylerland's excluded area. Their second amended petition, they contend, filed October 24, 1986, came well within the limitations period for breach of contract and fraud claims.

### 2. Whether Oliver and Parker Stated Causes of Action for Breach of Contract and Fraud

Oliver and Parker stated that contrary to the Rogers's assertions, they were not asserting an unviable cause of action for negligent breach of contract, but rather had stated an independent cause of action for fraud and that the summary judgment evidence created a genuine issue of material fact precluding summary judgment on that issue.

### 3. Claim for Breach of Duty of Good Faith and Fair Dealing

In response to the Rogers's motion for summary judgment on their claim for breach of duty of good faith and fair dealing, Oliver and Parker contended the summary judgment evidence raised a material issue of fact

---

7. Oliver and Parker cited: *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951 (1960); *Bertotti v. C.E. Shepherd Co.*, 752 S.W.2d 648, 651 (Tex.App.—Houston [14th Dist.] 1988, no writ); *Redding Foods, Inc. v. Berry*, 361 S.W.2d 467, 469 (Tex.Civ.App.—Dallas 1962, no writ); and *York v. Dotson*, 271 S.W.2d 347, 348 (Tex.Civ.App.—Fort Worth 1954,writ ref'd n.r.e.).

8. Act of May 23, 1989, 71st Leg., R.S., ch. 1193, § 1, 1989 Tex. Gen. Laws 4852 (amended 1993) (current version at TEX. BUS. & COM CODE ANN § 15.51 (Vernon Supp.1998)).

of a special relationship between them and the Rogers or an imbalance of bargaining power that gave rise to such a duty, which the Rogers breached.

The court granted the Rogers's and Pearle's motions for summary judgment, except for the portions that requested a declaratory judgment on their counterclaims. The orders did not specify on what grounds the court granted summary judgment. The Rogers and Pearle dismissed their counterclaims and the orders granting summary judgment became final.

### 4. Restrictive Covenant Meaning in Relation to 1976 Village Contract

In response to the Rogers's claim that there could be no breach of the Meyerland contract because it did not give Oliver and Parker rights within the TSO Village excluded area, Oliver and Parker asserted that their suit did not seek the right to open an office within the TSO Village excluded area, but rather was for the Rogers's breach of the Meyerland contract by permitting the owner of the TSO Village office to open an office within theTSO Meyerland excluded area.

## II. Analysis

### A. Rogers's Summary Judgment

In their second point of error, Oliver and Parker assert the trial court erred in granting summary judgment on their claims against the Rogers.

### 1. Standard of Review

Summary judgment is proper only when a movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Bangert v. Baylor College of Medicine,* 881 S.W.2d 564, 566 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Long v. State Farm Fire & Cas. Co.,* 828 S.W.2d 125, 126–27 (Tex.App.—Houston [1st Dist.] 1992, writ denied). In reviewing the summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Johnson,* 891 S.W.2d at 644; *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *Ban-*

*gert,* 881 S.W.2d at 565–66; *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied). In reviewing the granting of a motion for summary judgment, this Court will take all evidence favorable to the nonmovant as true. *Johnson,* 891 S.W.2d at 644; *Bangert,* 881 S.W.2d at 565; *Thompson v. Vinson & Elkins,* 859 S.W.2d 617, 619 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists for the plaintiff's cause of action. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 166–67 (Tex.1987); *Woomer v. City of Galveston,* 765 S.W.2d 836, 839 (Tex.App.—Houston [1st Dist.] 1988, writ denied). This may be accomplished by defendant's summary judgment evidence showing that at least one element of plaintiff's cause of action has been established conclusively against plaintiff, *Gray v. Bertrand,* 723 S.W.2d 957, 958 (Tex.1987), or by conclusively proving all elements of an affirmative defense as a matter of law such that there is no genuine issue of material fact. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). Once a movant produces sufficient evidence to establish the right to a summary judgment, the respondent must set forth sufficient evidence to give rise to a fact issue to avoid a summary judgment. *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 936–37 (Tex.1972); *Cweren v. Danziger,* 923 S.W.2d 641, 643 (Tex.App.—Houston [1st Dist.] 1995, no writ).

### 2. Breach of Contract Claim

The Rogers, in their motions for summary judgment, attacked Oliver's and Parker's breach of contract cause of action on the ground that the covenant not to compete was unenforceable as a matter of law because its duration was unlimited. This ground of their motions for summary judgment is discussed in sections "a." and "b." below.

#### a. Business and Commerce Code, Sections 15.50–15.51

In 1989, Senate Bill 946 amended the Business and Commerce Code. It added section 15.50, which provided as follows:

Notwithstanding Section 15.05 of this code, a covenant not to compete is enforceable to the extent that it:

(1) is ancillary to an otherwise enforceable agreement but, if the covenant not to compete is executed on a date other than the date on which the underlying agreement is executed, such covenant must be supported by independent valuable consideration; and

(2) contains reasonable limitations as to time, geographical area, and scope of activity to be restrained that do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

Act of May 23, 1989, 71st Leg., R.S., ch.1193, § 1, 1989 Tex. Gen. Laws 4852 (amended 1993) (current version at TEX. BUS. & COM. CODE ANN. § 15.50 (Vernon Supp.1998)). The legislature expressly made the statute retroactive. *Id.* at § 2.

■■■ We and the parties agree that the purpose of the statute was to return the law to the way it was before *Hill,* that is, to testing the enforceability of covenants not to compete by the "reasonableness" test laid down in *Weatherford Oil Tool Co. v. Campbell,* 161 Tex. 310, 340 S.W.2d 950, 951 (1960). The reasonableness test states a restraint of trade is unreasonable, in the absence of statutory authorization or dominant social or economic justification, if it is greater than required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted. *Id.* The period of time during which the restraint is to last and the territory that is included are important factors to be considered in determining the reasonableness of the agreement. *Id.*

After making this holding, the *Weatherford* court went on to hold that the covenant not to compete it had under consideration was unreasonable because its effect was an unlimited geographic restriction on the promisor. *Id.* at 952. However, the *Weatherford* court did not hold the covenant unreasonable, just because it was unlimited geographically, but because such unlimited geographic scope was

"clearly not necessary for the protection of petitioner's business or good will. . . ." *Id.*

■■■ Under former section 15.51(b) of the Business and Commerce Code,[9] the Rogers and Pearle had the burden of establishing that the covenant not to compete did not contain a reasonable limitation as to time and that the scope of activity to be restrained imposed a greater restraint than was necessary to protect the goodwill or other business interest of Oliver and Parker. The Rogers and Pearle attempted to discharge this burden by arguing that because the covenant had no time limitation, it was, as a matter of law, unreasonable.

As we have already seen in *Weatherford,* the duration of a covenant is a fact to be considered in determining whether a covenant meets the test of reasonableness. *Weatherford,* 340 S.W.2d at 951. However, the lack of a fixed time limitation cannot, in and of itself, render a covenant unreasonable. *See, Greenstein v. Simpson,* 660 S.W.2d 155, 159 (Tex.App.—Waco, 1983, writ ref'd n.r.e) ("While a person may agree in connection with the sale of his business, not to re-enter a similar competitive business for the remainder of his life, such an agreement must be reasonably limited as to geographic area in order to be valid."); *see, e.g., Clay v. Richardson,* 290 S.W. 235 (Tex.Civ.App.—Fort Worth 1926, writ dism'd w.o.j.) (court upheld validity of covenant of theater seller never to open a theater again in town where theater located); *Randolph v. Graham,* 254 S.W. 402, 403–04 (Tex.Civ.App.—1923 San Antonio, writ ref'd n.r.e.) (court upheld validity of covenant by physician, who sold his practice, not to practice in a town or within a 20–mile surrounding radius for an unlimited period of time).

Pearle argues that the durations of the covenants in *Greenstein, Clay,* and *Randolph* were limited by the lifetime of the promisors. However, it is manifest from the contract that, in the same way, the duration of the covenant in paragraph nine is limited by the lives of Oliver and Parker, and, as they have noted, it is also subject to an earlier termi-

9. Act of May 23, 1989, 71st Leg., R.S., ch.1193, § 1, 1989 Tex. Gen. Laws 4852 (amended 1993) (current version at TEX. BUS. & COM.CODE ANN. § 15.51 (Vernon Supp.1998)).

nation by the contract provision that they may not sell the office to a third party without first giving the Rogers the right of first refusal. Further, this argument is inadequate to meet Pearle's obligation under section 15.51(b) to show why in the face of continuing contractual obligations to pay advertising assessments in the thousands of dollars, the covenant imposes a greater restraint than is necessary to protect the goodwill or other business interests of Oliver and Parker.

The Rogers rely on *Wissman v. Boucher*, 150 Tex. 326, 240 S.W.2d 278 (1951) for the proposition that covenants not to compete without limitations of time are unreasonable as a matter of law. The Rogers's reliance on *Wissman* is misplaced. First, the case does not involve the sale of a business. *Id.* at 278–79. Additionally, the covenant involved in *Wissman* was not held to be unreasonable simply because it was unlimited as to time, but rather because it was unlimited as to both time and space, was unlimited as to those against whom competition was sought to be restricted, and because the consideration given for it by the promisee was relatively insignificant. *Id.* at 280–81. None of those circumstances exist in this case.

We conclude that pointing to the lack of a time limitation in the covenant not to compete could not discharge the Rogers's and Pearle's burden under section 15.51(b). Thus, this ground in their motions for summary judgment could not have served as a valid basis for the court's summary judgment.

**b. Texas Antitrust Statute**

■ Section 15.04 of the former Texas antitrust statute provided:

(a) Every monopoly, trust, and conspiracy in restraint of trade, as defined in Sections 15.01, 15.02, and 15.03 of this code, respectively, is illegal and prohibited.

(b) An agreement violating the prohibition against monopoly, trust, or conspiracy in restraint of trade contained in Subsection (a) of this section is void and unenforceable in law or equity.[10]

In their motions for summary judgment, the Rogers and Pearle asserted that paragraph nine of the agreement constituted an outlawed trust under former section 15.02(b)(7) of the Texas antitrust statute, which provided:

(b) A 'trust' is a combination of capital, skill, or acts by two or more persons to . . .

(7) refrain from engaging in business, or from buying or selling tangible personal property, partially or entirely in this state.[11]

As authority for the proposition that the covenant not to compete violated this provision, the Rogers and Pearle cited *Climatic Air Distribs. v. Climatic Air Sales, Inc.*, 162 Tex. 237, 345 S.W.2d 702 (1961), which held that the granting and accepting of the exclusive right to sell a manufacturer's product within a given territory is a violation of the antitrust statutes. *Id.* at 704. In their response to the motions for summary judgment, Oliver and Parker argue, and we agree, that *Climatic Air* is distinguishable from the instant case in that the covenant in that case was not incident to the sale of a business as was the Rogers's covenant with Oliver and Parker. See for example, *Clay*, 290 S.W. at 236 (in case in which seller of theater business entered into a covenant not to compete with buyer, court held,

"That a seller of property may by a restrictive promise, reasonably limited, agree to refrain from himself engaging in a business which would impair the value of the property to the buyer for the purpose for which he intended to use it, is not to be questioned. Restrictive contracts of the [sic] kind cannot be said to be unlawful as being in restraint of trade, nor as contra-

10. Act of May 24, 1967, 60th Leg., R. S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2556, amended by Act of May 26, 1983, 68th Leg., R.S., ch. 519, § 1, 1983 Tex. Gen. Laws 3010, 3014–15 (current version codified at Tex. Bus. & Com.Code Ann. § 15.05 (Vernon 1987 and Vernon Supp.1998)).

11. Act of May 24, 1967, 60th Leg., R. S., ch. 785, § 1, 1967 Tex. Gen. Laws 2343, 2555, amended by Act of May 26, 1983, 68th Leg., R.S., ch. 519, § 1, 1983 Tex. Gen. Laws 3010, 3011 (current version codified at Tex. Bus. & Com.Code Ann. § 15.05 (Vernon 1987)).

vening our statute prohibiting trusts."
(Citations omitted).).

The other cases[12] cited in the Rogers's brief
for the proposition that an exclusive distribu-
torship is an illegal restraint of trade, are
distinguishable because none of those cases
involved the sale of a business, as this case
does. We hold that a violation of the Texas
antitrust statute could not serve as a valid
basis for the court's summary judgment.

In their motion for summary judgment,
the Rogers also attacked Oliver's and Par-
ker's breach of contract cause of action on
the ground that it was barred by limitations.
In response, Oliver and Parker asserted the
discovery rule, which we discuss below.

### c. Applicability of Discovery Rule to Breach of Contract Claim

■ In a contract case, the statute of limi-
tations begins to run at the time the wrong
was or should have been discovered, not from
the date of the wrongful act or omission.
*Gifford v. Bank of S.W.*, 712 S.W.2d 182, 184
(Tex.App.—Houston [14th Dist.] 1986, no
writ). Generally, application of the discovery
rule has been permitted in those cases when
the nature of the injury incurred is inherent-
ly undiscoverable and the evidence of injury
is objectively verifiable. *Computer Assocs.
Int'l, Inc. v. Altai*, 918 S.W.2d 453, 456 (Tex.
1994).

■ Here, we must accept as true Oliver's
and Parker's summary judgment evidence
that they did not learn that in 1976 the
Rogers had contractually granted to the own-
er of the TSO Village office the right to open
another optometry office using the TSO
name in their excluded area until N. Jay
Rogers produced the Village contract at his
deposition in 1986. As a right granted in a
private contract between the Rogers and the
Village office owner, it was, with due dili-
gence, inherently undiscoverable to Oliver
and Parker. This conclusion is supported by
their affidavit testimony that: (1) neither in
1976, nor thereafter, did the Rogers tell them

that they were changing particular contracts
or that such changes would affect their Mey-
erland contract and (2) they did not have any
reason to believe that any of the other offices
were changing their contracts, or, if so, that
those changes would affect their Meyerland
contract.

The second requirement for application of
the discovery rule, whether evidence of the
injury is objectively verifiable, has more ap-
plication in personal injury cases. No one
disputes that the Rogers did grant Seibel the
right to open an optometry office using the
TSO name within TSO Meyerland's excluded
area.

Oliver and Parker having filed their suit
against the Rogers in 1986, the same year
they learned of the Rogers's grant to Seiebel
of the right to open an optometry office using
the TSO name within the Meyerland exclud-
ed area, the trial court could not have based
the summary judgment on Oliver's and Par-
ker's contract claim against the Rogers on
the statute of limitation ground.

The Rogers argue that if the discovery
rule applies to contract cases in Texas, their
February 1978 letter to Parker informed Oli-
ver and Parker that their contractual protec-
tion under the covenant was rescinded. By
this argument the Rogers mean (1) that for
statute of limitations purposes, if they com-
mitted a "wrong" giving rise to a breach of
contract claim, it occurred with the February
1978 letter disavowing the covenant, and (2)
that Oliver and Parker should have filed suit
for breach of contract within four years of
that date, but did not. The trouble with this
argument is that the Rogers did not make it
in their motion for summary judgment, and,
therefore, we cannot consider it as a basis for
affirming the trial court's summary judg-
ment. *See Home Indem. Co. v. Pate*, 814
S.W.2d 497, 500 (Tex.App.—Houston [1st
Dist.] 1991, writ denied) (summary judgment
cannot be affirmed on any grounds not pre-
sented in the motion for summary judgment).

**12.** *Patrizi v. McAninch*, 269 S.W.2d 343 (1954); *Ford Motor Co. v. State*, 142 Tex. 5, 175 S.W.2d 230 (1943); *Pram Lab., Inc. v. Pram Lab–S., Inc.*, 445 S.W.2d 533 (Tex.Civ.App.—Dallas 1969, no writ); *Jackson Brewing Co. v. Clarke*, 375 S.W.2d 352 (Tex.Civ.App.—Beaumont 1964, writ ref'd n.r.e.); *Rogers v. Westinghouse Elec. Supply Co.*, 116 S.W.2d 886 (Tex.Civ.App.—Dallas 1938, writ ref'd); *Nat'l Automatic Mach. Co. v. Smith*, 32 S.W.2d 678 (Tex.Civ.App.—Austin 1930, no writ).

### d. Restrictive Covenant Meaning in Relation to 1976 Village Contract

Our review of this ground for summary judgment involves the interpretation of paragraph nine, and exhibit A of the Meyerland contract, as well as Oliver's and Parker's fifth amended petition.

■ The construction of an unambiguous contract presents a question of law for the court. *Edwards v. Lone Star Gas Co.*, 782 S.W.2d 840, 841 (Tex.1990). A contract is construed in accordance with the plain meaning of its language, unless it definitely appears from the writing as a whole that the intention of the parties would be defeated by such a procedure. *See, e.g., Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987).

■ The pertinent provisions of the Meyerland contract provide:

9. [The Rogers] agree that for so long as [Oliver and Parker] are not in default as to the covenants and conditions of this contract, [the Rogers] will not open a like or similar optometric business or optical dispensary for the practice of optometry nor grant any Third Party the right to open a like or similar optometric business or optical dispensary under the name T.S.O. (as defined) for the practice of optometry, within that certain area as described in Exhibit "A" attached hereto and hereinafter referred to as the 'excluded area'.

EXHIBIT 'A'

The 'excluded area' shall be defined as that area falling within the perimeter of a circle having a radius of three (3) miles and having as its center the Meyerland Office of Texas State Optical at its location as of the date of execution of this instrument, provided there is specifically excepted herefrom any Texas State Optical office in operation at the date of execution of this instrument.

The plain meaning of the relevant portions of these provisions is that aside from any preexisting TSO office within the excluded area, the Rogers would not permit any third party to open another TSO office within TSO Meyerland's excluded area. It is undisputed that on March 28, 1968, when the Meyerland contract was executed, aside from the TSO Meyerland office, there was no other TSO office within TSO Meyerland's excluded area. It is also undisputed that the 1986 Village contract permitted the owner of the TSO Village office to open a TSO office within TSO Meyerland's excluded area. An examination of Oliver's and Parker's fifth amended petition shows that Oliver and Parker did not seek to open a TSO office within the excluded area of the TSO Village office, but rather to obtain damages from the Rogers for allowing the owner of the TSO Village office to open an office within TSO Meyerland's excluded area. Accordingly, the Rogers's assertion that they could not have breached the Meyerland contract because it never gave Oliver and Parker any right to any portion of the TSO Village territory could not have served as a valid ground for the court's summary judgment in favor of the Rogers.

We sustain Oliver's and Parker's second point of error as it relates to their breach of contract claim against the Rogers.

### 3. Fraud Claim

#### a. Intent Element Negated?

■ In their motion for summary judgment, the Rogers asserted they had negated the intent element of Oliver's and Parker's fraud cause of action. They pointed to the summary judgment evidence that Oliver and Parker thought that at the time they signed the contract, the Rogers intended to honor their obligation under paragraph nine. They also pointed to summary judgment evidence that the Rogers did honor paragraph nine for eight years from the execution of the agreement in 1968 until 1976 when the Village contract was reformed. Additionally, they cited the affidavit testimony of N. Jay Rogers that the reason the Village contract was reformed was to eliminate what he thought were illegal anticompetitive restrictions.

■ In response, Oliver and Parker cited *Susanoil Inc. v. Continental Oil Co.*, 519 S.W.2d 230 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.) for the proposition that even if a party intends to do as it promises when it makes the promise, if circumstances

change so that the promising party knows that it no longer intends to keep the promise, failure to disclose the changed circumstances to the party to whom the promise was made constitutes fraud. *Id.* at 236 n. 6. We do not read the *Susanoil* court's opinion on this point as broadly as do Oliver and Parker. This rule was held to apply, *"before* closing the transaction." *Id.* at 236 (emphasis added). In this case, Oliver and Parker asserted the Rogers had a duty to disclose an alleged intention not to perform the contract *after* the transaction was closed. A promise to do an act in the future is actionable fraud when made with no intention of performing the act. *Spoljaric v. Percival Tours, Inc.,* 708 S.W.2d 432, 434 (Tex.1986). While a party's intent in making the representation may be inferred from the party's subsequent acts after the representation was made, still the party's intent is determined as of the time the party made the representation. *See id.; Turboff v. Gross,* 833 S.W.2d 235, 237 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Failure to perform a future act is fraud only when there is no intent to perform the act at the time the representation was made. *Figueroa v. West,* 902 S.W.2d 701, 707 (Tex.App.—El Paso 1995, no writ). Cases in which a party was induced into signing a contract by a promise that the promisor had no intention of keeping at the time he made the promise are to be distinguished from situations in which a party has made a promise with an existent intent to fulfill its terms and who then changes his mind and refuses to perform; otherwise, every breach of contract would involve fraud. *King v. Wise,* 282 S.W. 570, 572 (Tex.Comm'n.App.1926).

We conclude the holding in the *Susanoil* case cited by Oliver and Parker, together with the summary judgment evidence of the Rogers contractually granting Seibel the right to open an office within Oliver's and Parker's excluded area do not provide a basis for reversing the trial court's summary judgment on their fraud claims.

■ Next, we examine Oliver's and Parker's contention that the affidavit testimony of N. Jay Rogers raises an issue of material fact concerning his intent to comply with paragraph nine at the time he entered into the contract in 1968. In their summary judgment response and appellate brief, Oliver and Parker cited affidavit testimony by N. Jay Rogers that under the April 1968 agreement between the Rogers and Seibel for TSO Village office, Seibel had the right to operate anywhere within a two and one-half-mile territory, including the Stella Link and Holcombe location, which is within the TSO Meyerland's excluded area. Oliver and Parker assert that when this statement by N. Jay Rogers is contrasted with the three-mile exclusive territorial provision in their agreement, it raises a question of material fact whether N. Jay Rogers ever intended to abide by that provision of the TSO Meyerland contract. Indulging every reasonable inference in favor of the nonmovant and resolving all doubts about the existence of a genuine issue of fact against movant N. Jay Rogers, as we must, we agree that such evidence does raise an issue of material fact for the determination of a jury.

Such is not the case, however, with respect to S.J. Rogers. The Rogers's summary judgment evidence: (1) that Oliver and Parker thought that at the time they signed the contract, the Rogers intended to honor their obligation under paragraph nine, (2) that the Rogers did honor paragraph nine for eight years, and (3) that the reason the Village contract was reformed was to eliminate illegal anticompetitive restrictions, is sufficient to negate the intent element of Oliver's and Parker's fraud claim against S.J. Rogers. Under *"Moore" Burger, Inc.,* it then became incumbent on Oliver and Parker to set forth sufficient evidence to give rise to a fact issue to avoid summary judgment. As we have already held, they did this with respect to N. Jay Rogers, but they have set forth no comparable evidence with respect to S.J. Rogers. Thus, we hold the court's summary judgment on Oliver's and Parker's fraud claim against S.J. Rogers is affirmable on the ground of the elimination of its intent element.

Before deciding whether to reverse the summary judgment as it relates to Oliver's and Parker's fraud claim against N. Jay Rogers, we must, however, examine the Rogers's other grounds for summary judgment on this cause of action.

### b. Does Oliver's and Parker's Action Sound Only in Contract?

■ As the first motion for summary judgment ground for defeating Oliver's and Parker's fraud claim, the Rogers asserted that Oliver and Parker could not enlarge their breach of contract case into a tort[13] case. As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex.1992). However, as we have noted earlier, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to a cause of action in fraud. *Id.* We have previously held that N. Jay Rogers's affidavit testimony that under the April 1968 Village agreement, Seibel had the right to operate anywhere within TSO Village's two and one-half mile excluded area, including the site within TSO Meyerland's excluded area, raises a material issue of fact regarding N. Jay Rogers's intent to abide by the covenant not to compete provision. This produces a viable material issue of fact for jury determination on fraud in the inducement of the contract. Thus, we hold the trial court could not have validly granted summary judgment to N. Jay Rogers on Oliver's and Parker's fraud claim on the ground that they were improperly enlarging their contract cause of action into one for fraud. *See Formosa Plastics Corp. USA v. Presidio Eng'rs*, 960 S.W.2d 41, 46–47 (Tex.1998) (held tort damages are recoverable for a fraudulent inducement claim irrespective of whether plaintiff only suffers economic loss related to subject matter of contract).

### c. Fraud Cause of Action Barred by Limitations?

■ The statute of limitations begins to run in fraud cases when the fraud was, or in the exercise of reasonable diligence, should have been discovered. *Vance v. Bell*, 797 S.W.2d 403, 404–05 (Tex.App.—Austin 1990, no writ). A defendant seeking summary judgment on the basis of limitations must prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury. *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Vance*, 797 S.W.2d at 405.

■ The basis for the Rogers's motion for summary judgment regarding Oliver's and Parker's fraud claims was deposition testimony by Parker that (1) he did not care what the TSO Village office contract said; (2) at the time of the March 20, 1978 letter from the Rogers, he did not do anything to find out if anybody was overlapping their area; (3) the Rogers did nothing to prevent them from finding out about the TSO Village's excluded area; and (4) he did not know whether N. Jay Rogers told him at the time he was trying to get the Meyerland contract changed that he was trying to change all the contracts, but, if he did, it would not have mattered to him. The Rogers's motion for summary judgment on the fraud claim was also based on deposition testimony by Oliver (1) that he and Parker might have discussed that new contracts were being sent to other TSO offices as well as Meyerland and (2) that the Rogers did not do anything to prevent them from finding out about the TSO Village office.

Oliver and Parker submitted summary judgment affidavit evidence (1) that neither of the Rogers told them that in 1976 they had entered into a contract with Seibel that gave him the right to open a TSO office within TSO Meyerland's excluded area and (2) that they first learned of this contract at N. Jay Rogers's deposition on September 9, 1986. This creates an issue of material fact regarding when Oliver and Parker discovered or with reasonable diligence should have discovered the reformed Village contract.[14]

---

13. Here the Rogers are considering fraud a species of tort.

14. In their motion for rehearing, the Rogers imply that in their deposition testimony, Oliver and Parker admitted they knew the Rogers changed the Village contract in 1976 to allow the TSO Village office owner to open a TSO office within the TSO Meyerland excluded area. They assert that later, in their summary judgment affidavits, Oliver and Parker changed their testimony on this subject and disavowed knowledge, until 1986, of the change in the Village contract. The

Such a question is ordinarily a fact question for the jury. *Vance*, 797 S.W.2d at 405. Thus, this ground could not have served as a valid basis for the court's summary judgment.

#### 4. Breach of Duty of Good Faith and Fair Dealing Claim

The supreme court will not imply a covenant of good faith and fair dealing in every contract. *Arnold*, 725 S.W.2d at 167. A duty of good faith and fair dealing may arise as a result of a special relationship between the parties governed or created by contract. *Id.* Here the summary judgment evidence introduced by the Rogers shows that the relationship between the parties was that of sellers and buyers of a business, a relationship that has not been recognized as creating a special relationship. *See McClendon v. Ingersoll–Rand Co.*, 757 S.W.2d 816, 819 (Tex.App.—Houston [14th Dist.] 1988), *rev'd on other grounds*, 779 S.W.2d 69 (Tex. 1989). The burden then fell to Oliver and Parker to set forth evidence of a special relationship from which a duty of good faith and fair dealing arose. They attempted to discharge this burden by arguing that the Rogers were in a superior bargaining position to them because, at the time of the contract execution, they were mere employees of the Rogers and that the Rogers had behind them the resources and clout of the TSO enterprise. However, the employer-employee relationship has been held not to constitute a special relationship, *see McClendon*, 757 S.W.2d at 819–20, and amongst Oliver's and Parker's summary judgment evidence, there is no evidence that the Rogers were in a superior bargaining position to them so as to give rise to a special relationship.

We sustain Oliver's and Parker's second point of error as it relates to their breach of contract claims against both the Rogers and as it relates to their fraud claims against N. Jay Rogers. We overrule their second point of error as it relates to their fraud claim

against S.J. Rogers and their breach of duty of good faith and fair dealing claim against both the Rogers.

#### B. Pearle's Summary Judgment

In their third point of error, Oliver and Parker assert the trial court erred in granting summary judgment to Pearle on their claims against it.

#### 1. Breach of Express Contract Claim

In their fifth amended original petition, Oliver and Parker contended that Pearle succeeded to the Rogers' rights and obligations under the Meyerland contract by virtue of a provision in the asset acquisition agreement transferring to Pearle ownership of the Rogers' rights, title, and interest to the trademarks, tradenames, business names, and logos for and associated with the name Texas State Optical or T.S.O.

However, as Pearle argued in its motion for summary judgment, it did not succeed to the Rogers obligation under paragraph nine of the Meyerland contract because of the following language in the asset acquisition agreement:

> Purchaser [Pearle] shall not assume or in any way become liable for any liabilities or obligations of any of the Sellers [the Rogers] of any nature whatsoever, whether accrued, absolute, contingent or otherwise, except as expressly assumed by Purchaser under the terms of this agreement.

The trial court, interpreting this contract language as a matter of law, could have properly concluded that Pearle did not "expressly assume" the Rogers' obligation under paragraph nine of the Meyerland contract. It is true that Pearle did "expressly assume" ownership rights, generally, in the tradename Texas State Optical. However, there is no express mention made in the asset acquisition agreement of any obligation to the Rogers under paragraph nine of the Meyerland contract, let alone that Pearle was assuming it. Thus, the trial court properly granted Pearle's motion for summary judg-

---

Rogers assert Oliver and Parker did this to create a sham issue of material fact, contravening our holding in *Farroux v. Denny's Restaurants*, 962 S.W.2d 108, 109–10 (Tex.App.—Houston [1st Dist.] 1997, no writ)that such could not be done.

In their motion for rehearing, the Rogers did not give us citations to the record where the alleged contradictions occurred. There is no contradiction between Oliver's and Parker's deposition testimony and their affidavit testimony.

ment on Oliver's and Parker's breach of express contract claims against Pearle.

### 2. Breach of Implied Contract Claim

■ Oliver and Parker contended that Pearle succeeded to the Rogers's rights and obligations under the Meyerland contract by virtue of an implied contract between TSO, Inc. and Pearle on the one hand and the Rogers on the other hand. Oliver and Parker contended the implied contract was created by Pearle's assumption of the right to conduct on-site audits of the associate offices as part of their quality review program and its attorney's statement setting forth Pearle's position for denying Oliver's and Parker's request that action be taken to stop the relocation of the TSOVillage office in TSO Meyerland's excluded area.

■ When there exists a valid express contract covering the subject matter, there can be no implied contract. *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex.1964). The rights and obligations acquired from the Rogers by Pearle were clearly set forth in the asset acquisition agreement. It provided that Pearle was not acquiring the TSO Meyerland office and that Pearle was not assuming or in any way becoming liable for any liabilities or obligations of the Rogers, whether accrued or contingent. Because there was a valid and existing contract covering the subject matter of the alleged implied contract, there could be no such implied contract.

■ Further, any such implied contract would be unenforceable under the statute of frauds. The statute of frauds provides that an agreement that is not to be performed within one year from the date of its making is not enforceable unless it is in writing and signed by the party to be charged. *Mandell v. Hamman Oil and Refining Co.*, 822 S.W.2d 153, 162 (Tex.App.—Houston [1st Dist.] 1991, writ denied); TEX. BUS. & COM. CODE ANN. § 26.01 (Vernon 1987). The implied contract would not be in writing. Being one to enforce a covenant not to compete for an indefinite period of time, by its nature, the implied contract would be one that could not be performed within one year. The statute of frauds applies to bar enforcement of

implied as well as express contracts. *Mandell*, 822 S.W.2d at 162.

We overrule Oliver's and Parker's third point of error.

Because our rulings on Oliver's and Parker's second and third points of error are dispositive of this appeal, we do not address point of error one.

### III. Conclusion

We affirm the trial court's summary judgment in favor of Pearle. We reverse the trial court's summary judgment in favor of the Rogers as it relates to Oliver's and Parker's breach of contract cause of action against S.J. Rogers and N. Jay Rogers, individually, and d/b/a Texas State Optical and their fraud cause of action against N. Jay Rogers, individually, and remand the cause to the trial court. In all other respects, the summary judgment in favor of the Rogers is affirmed.