Opinion issued February 9, 2006






     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00109-CV




HERBERT W. CHRISTENBERRY, EXECUTOR OF THE ESTATE OF
ABSALOM T. WEBBER, JR., DECEASED, AND THE ASSOCIATION OF
GRADUATES OF THE UNITED STATES MILITARY ACADEMY,
Appellants

V.

DONNA P. WEBBER, Appellee




On Appeal from the Probate Court
Galveston County, Texas
Trial Court Cause No. 61,310-B




MEMORANDUM OPINION

          Each party to this appeal asserts that the opposing party breached a settlement
agreement and challenges the trial court’s judgment entered following a jury trial.
Appellee, Donna Webber, also known as Donna Peterson (Webber), claimed at trial
that appellant, Herbert W. Christenberry, as Executor of the Estate of Absalom T.
Webber, Jr. (Christenberry), breached their agreement that neither disclose terms of
their settlement and that Christenberry not assist anyone in any way to pursue any
claims or causes of action that might be asserted against Webber. Appellants,
Christenberry and the Association of Graduates of the United States Military
Academy (AOG), claimed at trial that Webber breached terms of the settlement
agreement by filing a lawsuit to enforce her Partition and Exchange Agreement with
her deceased husband (the marital property agreement), a claim that she had released
under the terms of the settlement agreement.
          The judgment challenged awarded Webber (1) $100,000 as attorney’s fees, plus
interest, incurred in defending the wrongful death case, (2) $75,000 as attorney’s fees,
plus interest, incurred at trial for pursuing the breach of the settlement agreement
lawsuit, and (3) $25,000 for an appeal to the court of appeals plus $25,000 for any
appeal to the Supreme Court of Texas. The judgment was premised on the jury’s
findings that Christenberry materially breached (1) the “will not assist” clause of the
settlement agreement,


 by paying Tim Beeton to represent Michael Webber, and (2)
the confidentiality clause of the settlement agreement, by divulging that Webber was
the party who insisted that the settlement agreement be kept confidential. Consistent
with the jury’s negative answers to certain questions, the judgment awarded no
damages against Webber. More specifically, the jury did not find that Webber
materially breached the settlement agreement terms by suing to recover under the
marital property agreement, and the jury assessed no attorney’s fees against Webber. 
          Christenberry asserts six issues on appeal. In his first three issues,
Christenberry challenges the sufficiency of the evidence to establish that he breached
the confidentiality and no-assist clauses in the settlement agreement and,
alternatively, that those breaches resulted in $100,000 in attorney’s fees. In his fourth
issue, Christenberry contends that the evidence is insufficient to show that Webber
incurred $75,000 in attorney’s fees to pursue the breach of settlement lawsuit at trial. 
Christenberry’s fifth issue asserts that the trial court erred by permitting an expert
witness to testify because Webber did not designate the expert as a witness. In his
sixth issue, Christenberry contends that the evidence conclusively establishes that
Webber breached the settlement agreement by suing to recover under her marital
property agreement with her deceased husband.
          AOG also appeals the trial court’s judgment, which awarded no damages to
AOG. In two issues, AOG contends that the evidence conclusively establishes that
Webber breached the settlement agreement by suing to recover under the marital
property agreement with her deceased husband and that AOG was entitled to recover
its attorney’s fees for pursuing the breach of contract claim. In its third issue, AOG
asserts that Webber was not entitled to recover her attorney’s fees for pursuing her
breach of contract claim.
          In the two issues of her appeal, Webber contends that the trial court erred by
refusing to submit a question to the jury on the issue of fraud and by failing to submit
jury charge questions in broad form. See Tex. R. App. P. 277. AOG responds to
Webber’s appeal by asserting that she was required to bring a timely motion for new
trial in order to “perfect” her appeal. See Tex. R. Civ. P. 324. 
Disposition Summary
          We sustain Christenberry’s first two issues on appeal by holding that the
evidence is legally insufficient to establish that Christenberry breached the
confidentiality and no-assist clauses in the settlement agreement. Therefore, we need
not address Christenberry’s third, fourth, and fifth issues, which assert that the
evidence is insufficient to establish that Webber’s damages were $100,000 as a result
of that alleged breach, that she incurred $75,000 in attorney’s fees to pursue the
breach of contract lawsuit at trial, and that the trial court erred by allowing expert
testimony. Similarly, we need not address AOG’s third issue, which asserts that
Webber was not entitled to recover her attorney’s fees. 
          Concerning Christenberry’s sixth issue and AOG’s first issue, each of which
asserts that the evidence conclusively establishes that Webber breached the settlement
agreement by suing to recover under it, and AOG’s third issue, which asserts that
AOG is entitled to recover its attorney’s fees for pursuing the breach of contract
claim, we assume, without deciding, that Webber breached the settlement agreement. 
But, we overrule these issues because AOG and Christenberry failed to prove their
damages. Christenberry and AOG did not segregate their attorney’s fees incurred at
trial or request separate jury questions as to the fees specifically incurred as a result
of Webber’s breach of the settlement agreement, if any, or show that fees incurred
from defending Webber’s reasserted claims under the settlement agreement were
inseparable from fees incurred from defending Webber’s breach of settlement
agreement claims against Christenberry and AOG. Christenberry and AOG have
therefore waived these complaints on appeal. 
          We also overrule the two issues in which Webber complains about the jury
charge because she did not object to the broad-form jury questions presented at trial
and did not present evidence of fraud. Additionally, we reject AOG’s contention that
Webber had to file a motion for new trial to appeal. 
          We therefore reverse the judgment of the trial court and render judgment that
Webber take nothing. 
Background
A.      Settlement
          After Webber and Absalom T. Webber, Jr. (Absalom) married, they entered
into the marital property agreement, which provided that, upon Absalom’s death,
Webber would receive $4,000,000 out of Absalom’s separate property. Following
Absalom’s death, Webber filed an original petition against his estate in district court
in Orange County, Texas, to enforce the marital property agreement (the first lawsuit). 
Webber filed her lawsuit on December 9, 1997, and the parties later settled. The
parties to the case were Webber, Christenberry, AOG, and Texas A & M Foundation. 
On July 14, 1999, the parties read their settlement terms into the court’s record
pursuant to Rule of Civil Procedure 11.
          On July 20, 1999, Christenberry filed a Petition for Authority to Settle
Litigation (the petition) in the Louisiana court that was presiding over the estate. The
petition, a public record, informed the Louisiana court that “Donna Peterson insisted
that the entire settlement agreement be kept confidential so that no one would be
aware of what monies she was receiving.”
          On August 11, 1999, the settlement agreement was finalized, subject to
approval by the Louisiana court. Pursuant to the settlement agreement, the estate paid
Webber $1,500,000 in settlement of all her claims.
          Pursuant to section 7 of the settlement agreement, the no-assist clause,
Christenberry, Texas A & M, and AOG agreed not to “assist anyone in any way in
pursuing any claims or causes of action which may hereafter be asserted against”
Webber. Section 8 of the settlement agreement was a confidentiality provision (the
confidentiality clause) stating that “the terms of this settlement agreement and release
are confidential and the parties agree not to disclose the terms of this settlement
agreement and release.” The settlement agreement expressly provided however that
it did not release any claims, including a wrongful death claim that might be asserted
by Absalom’s son, Michael Webber (Michael).
          On August 13, 1999, the trial court dismissed the case pursuant to the
settlement entered among the parties.
B.      The Wrongful Death Claim
          On November 30, 1999, Michael, who was represented by attorneys Fred
Hoelke and Kay Dube, filed a lawsuit against Webber in Galveston County, alleging
that she wrongfully caused Absalom’s death. Hoelke and Dube withdrew as
Michael’s attorneys on December 20, 2000. In January 2001, Michael decided not
to pursue the lawsuit against Webber because he was in rehabilitation for substance
abuse, and he informed Christenberry of his desire to dismiss the lawsuit. 
Christenberry, in his capacity as trustee of Michael’s trust, hired Tim Beeton to
represent Michael and instructed Beeton to dismiss the wrongful death suit. On
January 16, 2001, Beeton filed a motion to quash Michael’s deposition scheduled for
January 18, 2001, contending that Michael, who was in drug rehabilitation, could not
attend the deposition. Webber then counterclaimed against Michael for sanctions,
alleging that the wrongful death suit was frivolous. On February 22, 2001, Beeton
sent a letter to Webber’s attorney proposing to dismiss the wrongful death suit if
Webber would dismiss her counterclaim against Michael. On March 28, 2001,
although Webber had not dismissed her counterclaim for sanctions, Beeton filed a
motion for nonsuit of the wrongful death lawsuit. After filing the motion for nonsuit,
Beeton filed a countermotion for sanctions against Webber, claiming that her
counterclaim was frivolous. On August 17, 2001, after the commencement of trial
on the opposing sanctions claims, both parties voluntarily dismissed their sanctions
claims. The trial court entered an order nonsuiting all claims and parties on May 7,
2002.
C.      This Lawsuit
          In this lawsuit, Webber’s original and first amended original petitions alleged
the same claims that she asserted in the action to enforce the marital property
agreement. Her second amended original petition, the live petition in this case,
however, not only asserted claims regarding construction and enforcement of the
marital property agreement, but also added claims for breach of the settlement
agreement; fraud; breach of fiduciary duties, alternatively, constructive fraud; and
tortious interference with an existing contract. She alleged, among other things, that
Christenberry breached the confidentiality and no-assist clauses of the settlement
agreement.
          Christenberry counterclaimed, alleging that Webber breached the settlement
agreement by reasserting settled claims. AOG intervened in the case, also alleging
breach by Webber and sought damages as a party to the settlement agreement.
          At trial, Webber pursued the breach of the settlement agreement and fraud
claims only, but the trial court refused to submit the fraud claim to the jury, despite
Webber’s request for a jury instruction on the issue. Webber’s testimony regarding
the fraud claim was presented through a bill of exceptions. 
Motion for New Trial
          AOG contends that Webber was required to file a motion for new trial pursuant
to Rule of Civil Procedure 324 within 30 days after the trial court signed its judgment. 
          Rule 324(b) requires that a party file a motion for new trial to perfect an appeal
only in the following situations: 
(1) A complaint on which evidence must be heard such as one of jury
misconduct or newly discovered evidence or failure to set aside a
judgment by default;
 
(2) A complaint of factual insufficiency of the evidence to support a jury 
finding;
 
(3) A complaint that a jury finding is against the overwhelming weight
of the evidence;
 
(4) A complaint of inadequacy or excessiveness of the damages found
by the jury; or
 
(5) Incurable jury argument if not otherwise ruled on by the trial court.

Tex. R. Civ. P. 324. Although she filed a motion for new trial outside the 30-day
period required by rule 324, Webber’s issues on appeal complain about the court’s
charge submitted to the jury. A motion for new trial under rule 324 is not required
to preserve complaints concerning the jury charge. See id.; Tex. R. App. P. 272.
          Accordingly, AOG’s complaint regarding Webber’s failure to file a motion for
new trial is overruled.
Broad-Form Jury Questions
          In her second issue, Webber contends that the trial court erred by not
submitting broad-form questions to the jury, as required by Rule of Civil Procedure
277.
          Objections to the charge must be presented to the trial court “before the charge
is read to the jury.” Tex. R. Civ. P. 272. An objection not presented to the trial court
during this time is waived. Id. Specifically, for the trial court “to resolve a legal
issue before the jury could properly perform its fact-finding role[,] . . . a party must
lodge an objection in time for the trial court to make an appropriate ruling without
having to order a new trial.” Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000)
(quoting Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999)).
          The record shows that Webber objected to the lack of broad-form jury
questions in her motion for new trial, but did not object at trial on that basis before
the presentation of the charge to the jury. Because she failed to object timely to the
charge, Webber waived her complaint. See Tex. R. Civ. P. 272; Osterberg, 12
S.W.3d at 55. 
          We overrule Webber’s second issue.
Sufficiency of the Evidence
          In his first and third issues, Christenberry contends that the evidence is legally
and factually insufficient to support the jury’s findings that he breached the
confidentiality and the no-assist clauses of the settlement agreement and to support
the jury’s award of damages and attorney’s fees to Webber. In her first issue, Webber
contends that the trial court erred by refusing to submit a jury question on the issue
of fraud because evidence at trial supported her fraud claim. Christenberry and AOG
contend that Webber breached the settlement agreement as a matter of law by
reasserting settled claims.
          The supreme court recently addressed the appropriate standard of review for
legal sufficiency challenges. See City of Keller v. Wilson, 168 S.W.3d 802 (Tex.
2005). The court concluded that “[t]he final test for legal sufficiency must always be
whether the evidence at trial would enable reasonable and fair-minded people to reach
the verdict under review. . . . [L]egal-sufficiency review in the proper light must
credit favorable evidence if reasonable jurors could, and disregard contrary evidence
unless reasonable jurors could not.” Id. at 827. The court further held that an
appellate court “cannot substitute its judgment for that of the trier-of-fact, so long as
the evidence falls within its zone of reasonable disagreement.” Id. at 822. However,
although the court must “consider evidence in the light most favorable to the
judgment, and indulge every reasonable inference that would support it . . .[, i]f the
evidence allows of only one inference, neither jurors nor the reviewing court may
disregard it.” Id.
          In determining factual sufficiency, we must weigh all the evidence, both
supporting and conflicting, and may set the finding aside only if it is so contrary to
the overwhelming weight of the evidence as to be clearly wrong and manifestly
unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); In re King’s
Estate, 244 S.W.2d 660, 661 (Tex. 1951); Comm’n of Contracts of the Gen. Executive
Comm. of the Petroleum Workers Union v. Arriba, Ltd., 882 S.W.2d 576, 582 (Tex.
App.—Houston [1st Dist.] 1994, no writ). 
          When an opposing party does not object to the charge as submitted to the jury,
we review challenges to the sufficiency of the evidence from the perspective of the
charge given. See Osterberg, 12 S.W.3d at 55 (citing Tex. R. Civ. P. 272, 274, 278,
279).
          A settlement agreement is a contract, and its construction is governed by legal
principles applicable to contracts generally. Donzis v. McLaughlin, 981 S.W.2d 58,
61 (Tex. App.—San Antonio 1998, no pet.) (citing Nuno v. Pulido, 946 S.W.2d 448,
451 (Tex. App.—Corpus Christi 1997, no writ); Old Republic Ins. Co. v. Fuller, 919
S.W.2d 726, 728 (Tex. App.—Texarkana 1996, writ denied)). Courts construe
contracts as a matter of law, and their rulings are subject to de novo review. See J.M
Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003) (applying rule in
arbitration-agreement context) (citing Coker v. Coker, 650 S.W.2d 391, 394 (Tex.
1983)); C.M. Asfahl Agency v. Tensor Drilling, Inc., 135 S.W.3d 768, 780 (Tex.
App.—Houston [1st Dist.] 2004, no pet.) (interpreting asset-purchase agreement);
Tesero Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d 118, 125 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied) (interpreting indemnity agreement).
          In construing a written contract, the court’s primary concern is to ascertain the
true intent of the parties, as expressed in the written instrument. J.M Davidson, Inc.,
128 S.W.3d at 229; C.M. Asfahl Agency, 135 S.W.3d at 780. Accordingly, the court
must examine and consider the entire writing in an effort to harmonize and give effect
to all provisions so that none is rendered meaningless. J.M Davidson, Inc., 128
S.W.3d at 229. The court may not consider any single provision, taken in isolation,
as controlling, but must consider all provisions in context of the entire instrument. 
Id. If considering all provisions enables the court to construe the contract as giving
a “definite or certain legal meaning,” the contract is not ambiguous and may be
construed as a matter of law and enforced as written. Id.; Stewart Title Guar. Co. v.
Aiello, 941 S.W.2d 68, 73–74 (Tex. 1997); C.M. Asfahl Agency, 135 S.W.3d at 780
(citing Coker v. Coker, 650 S.W.2d 391, 393–94 (Tex. 1983)). Accordingly,
“[c]ontract terms are given their plain, ordinary, and generally accepted meanings
unless the contract itself shows them to be used in a technical or different sense.” 
Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 662 (Tex. 2005).
          The elements of a breach of contract claim are (1) the existence of a valid
contract between plaintiff and defendant, (2) the plaintiff’s performance or tender of
performance, (3) the defendant’s breach of the contract, and (4) the plaintiff’s damage
as a result of the breach. Prime Prods., Inc. v. S.S.I. Plastics, Inc., 97 S.W.3d 631,
636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). The elements of a valid
contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each
party’s consent to the terms, and (5) execution and delivery of the contract with the
intent that it be mutual and binding. Id.
          Two provisions of the settlement agreement at issue in this appeal are section
8, the confidentiality clause, and section 7, the no-assist clause.
A.      Confidentiality Clause
          The confidentiality clause provided as follows: “It is agreed that the terms of
this settlement agreement and release are confidential and the parties agree not to
disclose the terms of this settlement agreement and release.” As submitted to the jury
in the court’s charge, the jury was asked, “Did the Defendant materially breach the
confidentiality clause of the settlement agreement by divulging Donna P. Webber was
the party who insisted on the settlement agreement being confidential?” 
          Webber contends that Christenberry spoke with a newspaper reporter and with
a district attorney seven days after the settlement agreement was executed, which
breached the confidentiality clause. The jury charge, however, asked only whether
Christenberry breached the settlement agreement by divulging that Webber was the
party who insisted that the settlement agreement be confidential. The charge did not
inquire whether Christenberry breached the settlement agreement by speaking to a
newspaper reporter and to a district attorney seven days after the settlement
agreement was executed, and Webber did not request that inquiry in the charge. 
Because the jury made no finding on the issue, Webber has waived her complaint that
the evidence is insufficient to establish that Christenberry breached the settlement
agreement by speaking to a newspaper reporter and to a district attorney. See Tex.
R. Civ. P. 272; Osterberg, 12 S.W.3d at 55.
          Webber further contends that the evidence shows that Christenberry breached
the confidentiality clause by divulging that she was the party who insisted that the
settlement agreement be confidential because the undisputed evidence shows that
Christenberry informed the Louisiana court that Webber wanted the settlement
agreement to be confidential. Christenberry responds that his actions in informing
the Louisiana court that Webber wanted the settlement agreement to be confidential
did not, as a matter of law, breach the confidentiality clause of the settlement
agreement. 
          Section 19 of the settlement agreement states, “This release and settlement
agreement contains the entire agreement between the parties.” No term of the
settlement agreement indicates either the specific party who desired confidentiality
or that the specific party desiring confidentiality should not be disclosed by the
parties. We may not look outside the four corners of the settlement agreement to
ascertain the intent of the parties when, as here, the terms of the settlement agreement
are unambiguous. See Westchester Fire Ins. Co. v. Stewart & Stevenson Servs., Inc.,
31 S.W.3d 654, 658 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). Moreover,
section 19 of the settlement agreement specifically limits the terms of the settlement
agreement to the four corners of the document. Construing the contract in its entirety,
along with the plain meaning of the terms in the confidentiality clause, and reviewing
the evidence based on the charge question submitted, we hold that there is no
evidence in the record from which reasonable jurors could infer that Christenberry
breached the confidentiality clause by telling the Louisiana court that Webber desired
that the settlement terms remain confidential. See Stewart Title, 941 S.W.2d at
73–74; see also C.M. Asfahl Agency, 135 S.W.3d at 768; Osterberg, 12 S.W.3d at 55. 
Therefore, we hold that there is legally insufficient evidence that Christenberry
breached the confidentiality clause.
          We accordingly sustain Christenberry’s first issue.
B.      No-assist Clause
          The record reflects that the jury’s finding that Christenberry breached the no-assist clause of the settlement agreement is premised on Christenberry’s hiring Tim
Beeton to represent Michael in the wrongful death suit against Webber. 
Christenberry contends that he did not breach the no-assist clause as a matter of law,
because, in hiring Beeton to dismiss the wrongful death suit against Webber, he was
acting solely as the trustee of Michael’s trust and not assisting in any pursuit of a
“claim or cause of action” against Webber. Webber counters that because Beeton
appeared for depositions and filed motions in the wrongful death suit, there is
sufficient evidence of breach. Webber further contends that Christenberry’s
admitting that he would assist an entity, such as the district attorney, in bringing
criminal charges against her is evidence of Christenberry’s breach.
          The no-assist clause provides as follows: 
Herbert W. Christenberry, Individually, as Trustee, and as Independent
Executor of the Estate of Absalom T. Webber, Jr., The Texas A & M
Foundation, and The Association of Graduates of the United States
Military Academy further agree that neither they, nor any of them, shall
assist anyone in any way in pursuing any claims or causes of action
which may hereafter be asserted against Donna P. Webber.

As submitted to the jury, the trial court’s charge asked, “Did the Defendant materially
breach the ‘Will not assist’ clause of the Settlement Agreement by paying Tim Beeton
to represent Michael Webber?” Because we must review the sufficiency of the
evidence of breach of the no-assist clause according to the charge submitted, see
Osterberg, 12 S.W.3d at 55, which encompasses only Christenberry’s hiring of
Beeton, we need not address whether Christenberry’s admission that he would assist
an entity in bringing criminal charges against Webber is evidence of Christenberry’s
breach of the no-assist clause.
          The undisputed evidence in the record shows the following facts. Michael
initially filed the wrongful death lawsuit against Webber on November 30, 1999,
while represented by attorneys Hoelke and Dube. On December 20, 2000, the trial
court imposed a $2,000 sanction against Michael because he failed to attend three or
four scheduled depositions in the case. Christenberry, in his capacity as trustee of
Michael’s trust, paid the sanction. Michael’s attorneys withdrew from the wrongful
death lawsuit when Michael was sanctioned, citing Michael’s unavailability and
failure to cooperate. In January 2001, after Michael informed Christenberry that he
could not proceed with the lawsuit because he was in rehabilitation for substance
abuse, Christenberry hired Beeton to represent Michael. Christenberry’s sole
instruction to Beeton was to dismiss the wrongful death suit. On January 16, 2001,
Beeton filed a motion to quash Michael’s deposition scheduled for January 18, 2001,
because Michael, who was in drug rehabilitation, could not attend the deposition.
Webber then counterclaimed against Michael for sanctions, alleging that the wrongful
death suit was frivolous. On February 22, 2001, Beeton sent Webber’s attorney a
letter proposing to dismiss the wrongful death suit if Webber would dismiss her
counterclaim against Michael. On March 28, 2001, although Webber had not yet
dismissed her counterclaim for sanctions, Beeton filed a motion for nonsuit of the
wrongful death suit. After filing the motion to nonsuit the wrongful death claim,
Beeton filed a motion for sanctions against Webber on the grounds that her
counterclaim was frivolous. On August 17, 2001, after the trial of the sanctions
claims began, both parties voluntarily dismissed their sanctions claims. The trial
court entered an order nonsuiting all claims and causes of action on May 7, 2002.
          Construing the settlement agreement in its entirety and reviewing the
sufficiency of the evidence recited above in light of the charge question as submitted,
we hold that no evidence in the record indicates that Christenberry breached the no-assist clause by hiring Tim Beeton to represent Michael. The no-assist clause states
that Christenberry could not “assist anyone in any way in pursuing any claims or
causes of action . . . against Donna P. Webber.” (Emphasis added.). Nothing in the
record shows that Beeton pursued the wrongful death claim against Webber after he
began representing Michael. The record shows that Beeton filed the motion to quash
Michael’s deposition pursuant to Christenberry’s request that he get Michael out of
the case and because Michael could not appear. The record further shows that Beeton
used his offer to dismiss the case in an attempt to persuade Webber to dismiss her
claim for sanctions. When that was unsuccessful, Beeton nevertheless nonsuited
Michael. Nothing in the record suggests that Beeton took any action in pursuit of
prosecuting the wrongful death claim. 
          Webber also contends that Christenberry breached the no-assist clause by
paying Beeton to file the countermotion for sanctions.
          A settlement agreement or release that is valid on its face and has not been set
aside is a complete bar to a later action on the matters contained therein. DeLuca v.
Munzel, 673 S.W.2d 373, 375 (Tex. App.—Houston [1st Dist.] 1984, writ ref’d
n.r.e.). Regardless of its label, an agreement between parties, such as an agreement
not to assist “anyone in any way in pursuing any claims or causes of action,” as here,
may have the effect of a general release, as determined by the intent of the parties. 
See Loy v. Kuykendall, 347 S.W.2d 726, 728 (Tex. Civ. App.—San Antonio, 1961,
writ ref’d n.r.e.) (holding that release, when construed in light of facts and
circumstances shown by record, was not general release, but stating that intent of
parties determines nature of agreement). A release must be considered as a whole to
give effect to the general purpose and true intent of the parties. Id.
          General, categorical release clauses must be narrowly construed however. 
Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 938 (Tex. 1991). A release
generally covers only existing claims or claims being urged when the release was
delivered. Williams v. Glash, 789 S.W.2d 261, 264–65 (Tex. 1990). Although a
valid release may encompass unknown damages, results or claims that may develop
in the future, claims that are not clearly within the subject matter of the release are not
discharged, even if they existed when the release was executed. Brady, 811 S.W.2d
at 938. The release must encompass the claim to be released by referring specifically
to that claim. Id.
          Considering the settlement agreement at issue here as a whole, we conclude
that the parties clearly intended to release Webber from any existing claims or causes
of action by Christenberry, AOG, and Texas A & M Foundation. Section six of the
settlement agreement expressly sets aside any claim or cause of action “which
Michael Webber may assert against Donna P. Webber, including, but not limited to,
a claim for the wrongful death of Absalom T. Webber, Jr.” Accordingly, the
wrongful death action was clearly anticipated by the parties and therefore clearly
within the subject matter of the settlement agreement. See Brady, 811 S.W.2d at 938. 
We conclude that the no-assist clause, as part of the settlement agreement and release,
encompasses only claims and causes of action clearly within the subject matter of the
release. See id.
          Assuming, without deciding, that the filing of the countermotion for sanctions
could be construed as pursuing a claim or cause of action against Webber, however,
we conclude that a sanctions motion was not clearly within the subject matter of the
release when it was executed. We reach this conclusion because the sanctions motion
was neither an existing claim at that time, nor something to be anticipated by the
parties that would result from Michael filing a wrongful death suit. See id.; Glash,
789 S.W.2d at 264–65. We conclude that there is no evidence in the record from
which reasonable jurors could infer that Christenberry breached the settlement
agreement by hiring Beeton. Therefore, we hold that there is legally insufficient
evidence that Christenberry breached the no-assist clause.
          We sustain Christenberry’s second issue.
C.      Fraud Issue
          In her first issue, Webber contends that the trial court erred by refusing to
submit a question to the jury regarding fraud. Webber contends that she presented
evidence at trial of fraud from which the jury could have reasonably inferred that
Christenberry fraudulently induced her to enter the settlement agreement because the
jury found that Christenberry breached the confidentiality and no-assist clauses of the
settlement agreement. She further contends that her bill of exceptions, in which she
stated that she relied on Christenberry’s representations that Michael “shall not be
assisted” by Christenberry and on Christenberry’s assurances of confidentiality, is
evidence that Christenberry committed fraud.
          Webber submitted the following question for the jury charge, which the trial
court refused:
Did Defendant commit fraud against Donna Peterson Webber?
 
Fraud occurs when–
 
a.a party makes a material misrepresentation,
b.The misrepresentation is made with knowledge of its falsity or
made recklessly without any knowledge of the truth and as a
positive assertion, 
c.The misrepresentation is made with the intention that it should be
acted on by the other party, and, 
d.The other party relies on te [sic] misrepresentation and thereby
suffers injury
 
“Misrepresentation” means a promise of future performance made with
an intent, at the time the promise was made, not to perform as promised
or an expression of opinion that is false, made by one claiming or
implying to have special knowledge of the subject matter of the opinion
 
“Special knowledge” means knowledge or information superior to that
possessed by the other party and to which the other party did not have
equal access.

          A trial court is required to submit questions, instructions, and definitions that
are raised by the written pleadings and the evidence. Tex. R. Civ. P. 278; Elbaor v.
Smith, 845 S.W.2d 240, 243 (Tex. 1992). Although a trial court may not refuse to
submit an issue merely because the evidence was factually insufficient to support a
judgment, a trial court may refuse to submit an issue if no evidence exists to warrant
its submission. Elbaor, 845 S.W.2d at 243; Brown v. Goldstein, 685 S.W.2d 640, 641
(Tex. 1985).
          The following elements are required to prove fraud: (1) a material
misrepresentation, (2) that was either known to be false when made, or was asserted
without knowledge of its truth, (3) which was intended to be acted upon, (4) which
was relied upon, and (5) which caused injury. Dow Chem. Co. v. Francis, 46 S.W.3d
237, 242 (Tex. 2001). A party to a contract has a duty to abstain from inducing
another to enter the contract through the use of fraudulent misrepresentations. Haase
v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001).
          A promise to do an act in the future is actionable fraud when made with no
intention of performing the act. Oliver v. Rogers, 976 S.W.2d 792, 804 (Tex.
App.—Houston [1st Dist.] 1998, no pet.). Although a party’s intent in making the
representation may be inferred from the party’s subsequent acts after the
representation was made, intent is determined as of the time the party made the
representation. Id. Stated differently, failure to perform a future act is fraud only
when there is no intent to perform the act when the representation was made. Id.
          Failure to perform, standing alone, is not evidence of intent not to perform
when the promise was made. Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 435
(Tex. 1986). That fact, however, is a circumstance to be considered with other facts
to establish intent. Id. Because intent to defraud is not susceptible to direct proof, 
it may be proven by circumstantial evidence. Id. Slight circumstantial evidence of
fraud, when considered with the breach of promise to perform, is sufficient to support
a finding of fraudulent intent. Id. 
          We assume, without deciding, that a breach of the settlement agreement would
be some evidence of fraud when considered along with other circumstantial evidence
of fraud in this case. But, because we have concluded that there is no evidence that
Christenberry breached the settlement agreement and because Webber’s testimony
regarding fraud focused on Christenberry’s intent to breach the settlement agreement,
we further conclude that there is no evidence from which reasonable jurors could
infer that Christenberry fraudulently induced Webber to enter the settlement
agreement. Because no evidence, therefore, warranted submission of the fraud issue
to the jury, the trial court did not err by refusing to submit the issue. See Elbaor, 845
S.W.2d at 243; Brown, 685 S.W.2d at 641.
          We overrule Webber’s first issue.
D.      Evidence of Breach of the Settlement Agreement by Webber
          In his sixth issue, Christenberry contends that Webber breached the settlement
agreement as a matter of law because she alleged claims in this lawsuit that were
released under the settlement agreement. Christenberry further contends that, as a
result of Webber’s breach, he is entitled to attorney’s fees to defend those settled
claims. AOG likewise contends that Webber breached the settlement agreement by
suing to recover under the marital property agreement and that, as a result, AOG is
entitled to damages and attorney’s fees.
          To attack the legal sufficiency of an adverse finding on which an appellant had
the burden of proof at trial, the appellant must demonstrate on appeal that the
evidence conclusively established all vital facts in support of the issue. Dow Chem.,
46 S.W.3d at 241; accord Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328,
340 (Tex. 1998). In reviewing this challenge, we first examine the record for
evidence that supports the finding and disregard contrary evidence. Dow Chem., 46
S.W.3d at 241 (citing Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989)). If no evidence supports the finding, we then examine the entire record to
determine whether it establishes the contrary proposition as a matter of law. Id.
(citing Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983)). 
          The party seeking to recover attorney’s fees generally carries the burden of
proof. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991). In a case
involving multiple claims, as here, the party seeking attorney’s fees must present
sufficient evidence of a reasonable fee for the legal services attributable specifically
to the claims for which recovery of attorney’s fees is authorized. Universal Printing
Co. v. Premier Victorian Homes, Inc., 73 S.W.3d 283, 298 (Tex. App.—Houston [1st
Dist.] 2001, pet. denied). Accordingly, the party seeking attorney’s fees usually has
a duty to segregate nonrecoverable fees from recoverable fees. Panizo v. Young
Men’s Christian Ass’n of Greater Houston Area, 938 S.W.2d 163, 170 (Tex.
App.—Houston [1st Dist.] 1996, no pet.). An exception to this duty arises when the
attorney’s fees rendered are in connection with claims arising out of the same
transaction and are so interrelated that their prosecution or defense entails proof or
denial of the same facts. Universal Printing, 73 S.W.3d at 298. When causes of
action involved in a suit are dependent upon the same set of facts or circumstances
and are thus intertwined to the point of being inseparable, the party suing for
attorney’s fees may recover the entire amount covering all claims. Panizo, 938
S.W.2d at 170. 
          Evidence of unsegregated attorney’s fees is generally legally sufficient
evidence of segregated attorney’s fees, and the determination of reasonable attorney’s
fees is a question for the trier of fact. Id. Thus, a remand of the attorney’s fees issue
to the trial court for further consideration is ordinarily appropriate. Id. When, as
here, however, a party requests an erroneous instruction in the jury charge that is
actually submitted in the charge, that party cannot complain of the submitted
instruction on appeal. Williams v. Vought, 68 S.W.3d 102, 115 (Tex. App.—Dallas
2001, no pet.). A party preserves error in the jury charge only by making the trial
court aware of the complaint, timely and plainly, and by obtaining a ruling; otherwise
the error is waived. See State Dept. of Highways & Pub. Transp. v. Payne, 838
S.W.2d 235, 241 (Tex. 1992).
          The record contains the following evidence of Webber’s breach. Christenberry
testified that the three petitions filed by Webber in this lawsuit alleged the same
claims concerning the marital property agreement as were resolved by the settlement
agreement and that the original petition filed in this lawsuit was identical to the
petition filed in the first lawsuit. Webber’s second amended petition in this lawsuit,
which was admitted as Plaintiff’s Exhibit 7, reasserted claims concerning the marital
property agreement that were resolved by the settlement agreement, but also
alternatively alleged breach of settlement agreement. 
          Assuming without deciding that Christenberry and AOG conclusively
established that Webber breached the settlement agreement, they had the burden to
establish damages, in the form of attorney’s fees incurred, resulting from Webber’s
breach. Beeton succinctly testified as to Christenberry’s attorney’s fees at trial that
“a good deal of the work [done in this case was] fighting off the same allegations” as
in the first lawsuit. Seldon Graham, Jr., testified, also succinctly, for AOG that he
billed 558 hours on this lawsuit for a total of $139,500 in attorney’s fees. 
Christenberry and AOG neither segregated their attorney’s fees incurred as a result
of Webber’s reasserted claims from those incurred as a result of Webber’s breach of
settlement claims, nor conclusively established that the claims were so interrelated
that their prosecution or defense entailed proof or denial of the same facts and thus
that the claims were intertwined to the point of being inseparable. See Universal
Printing, 73 S.W.3d at 298; Panizo, 938 S.W.2d at 170.
          As submitted in the court’s charge, the jury was asked, “Did Donna P. Webber
materially breach the Settlement Agreement terms recited in the instructions by suing
to recover under the ‘Partition & Exchange’ agreement in this case?” The jury
answered “no” to this question and therefore did not answer the following questions
submitted on damages: “State in dollars, the amount, if any, of the attorney’s fees
reasonably and necessarily incurred or to be incurred by the Estate of Absalom T.
Webber, Jr., Deceased[.]” or “State in dollars, the amount, if any, of the attorney’s
fees reasonably and necessarily incurred or to be incurred by the Association of
Graduates of the United States Military Academy[.]” 
          Ordinarily, the failure to segregate fees results in a remand to the trial court for
the jury to determine reasonable fees. Panizo, 938 S.W.2d at 171. Here, however,
Christenberry’s and AOG’s requested jury questions on reasonable and necessary
attorney’s fees was not limited to fees incurred as a result of a breach of the
settlement agreement by Webber, and Christenberry and AOG did not present
evidence at trial that the attorney’s fees could not be segregated. Because these
erroneous jury questions were requested, unobjected to, by Christenberry and AOG
and submitted to the jury by the trial court, Christenberry and AOG cannot complain
of error now. See Williams, 68 S.W.3d at 115. Accordingly, Christenberry and AOG
have waived any error in the jury questions and are not entitled to a remand to
redetermine those jury questions. See Payne, 838 S.W.2d at 241.
          We overrule Christenberry’s sixth issue and AOG’s first and second issues.
Conclusion
          We reverse the judgment of the trial court and render judgment that Webber
take nothing.
 

                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Alcala.